By the Court, Talcott, J.
This action is brought to recover an alleged balance of account. The defendant is a man of some property, residing in Watertown, and has been subject for many years to occasional fits of intoxication, lasting one or two months. The plaintiff keeps a tavern in the neighborhood of the defendant’s residence. The defendant, it appears, has been in the habit of resorting to the plaintiff’s tavern when under the influence of these periodical fits of intoxication, and purchasing and drinking intoxicating liquors on credit, by means of which his intoxication was continued, and he has from time to time paid to the plaintiff considerable sums of money in payment of indebtedness alleged to have been incurred at such times.
In the latter part of May, 1870, the defendant commenced one of his “sprees,” as they are termed in the evidence, which lasted about forty days, more or less. According to the plaintiff’s account, the defendant came to his tavern on the 27th or 28th of May, 1870, in a state of partial intoxication, and wanted some whisky, which the plaintiff refused to let him have until he had paid a balance claimed by the plaintiff to be due him for liquor furnished while the defendant was on a previous spree, earlier in the spring. The items of the former account do not appear. The plaintiff alleges it was kept only on a slate, and effaced at the time it was paid. The plaintiff thereupon drew a check for $128, the alleged balance of the old account, and the defendant signed it, and the plaintiff presented it to the bank on which it was drawn, and received payment, and thereafter the defendant continued to procure and drink liquor at the plaintiff’s bar, occasionally inviting others to partake, and sometimes taking some home with him, until some time in the month of July. The defendant being for most of the time in a state of delirious and almost helpless intoxication.
During this time the plaintiff obtained a large sum of *567 money from the defendant, in the shape of checks on banks and negotiable promissory notes, which were given, as the plaintiff claims, in settlement of the current indebtedness, but which the defendant insists were mostly obtained under the pretence that the plaintiff would procure money on them to pay men in the employ of the defendant, and who were clamorous for their pay. For this period of time the plaintiff presents the following extraordinary account, viz:

The account is thus entered on a book kept by the plaintiff, and on the next page of the same book is a credit account, as follows, viz:

*568 The plaintiff produces also, in the same book, what he claims are the original entries of the same account, consisting of straight marks under the various heads of “Brandy in bottles,” “Whisky in bottles,” “Drinks whisky, wine and gin,” “Cigars,” “Meals” and “Drinks of ale.” These are without date, and with nothing to indicate whether they were had at the same or different time, but are under the heading “L. Hayes in account with S. P. Huffstater,” and under the head of “Brandy in bottles,” is a summing up of the whole, without any date, but substantially the same, in other respects, as in the formal account hereinbefore stated.
It seems, that during the running of this account, the plaintiff advanced, on account of the defendant, and at his request, the sum of $19 to take up a check drawn by the defendant and held by one Bates. The plaintiff received the money on the various checks credited to the defendant by him, and sold and transferred the notes, which were paid by the defendant, and on the trial produced by him. The evidence showed that the meals had by the defendant at the plaintiff’s tavern, and claimed in the account, and the cigars, were had during the same period when the liquors were had, but in his report the referee has separated that part of the account which is composed of liquors and drinks from the meals and cigars, and finds that the checks and notes credited by the plaintiff were given in payment of the liquor bill and the $55 borrowed money, and that so much of the account as is for meals and cigars remains unpaid ; and he reports as due from the defendant the amount of the $19 check and such part of the account as is for meals and cigars, with certain interest, making in all $136.84, for which he orders judgment for the plaintiff, with costs. The attempt, by the referee, to separate the legal from the illegal items of the plaintiff’s account, and apply the payments wholly to the illegal items, is clearly erroneous, inconsistent with the pleadings, and not sus *569 tained by the evidence. The plaintiff’s complaint is that between the 28th day of May and the 23d day of July, 1870, “the plaintiff, at the request of the defendant, furnished the defendant with board and lodging • for himself, his servants and employees, and furnished the defendant, at like request, with divers large quantities of divers liquors, ales and cigars, by the glass, bottle and box, and loaned and advanced to the defendant divers sums of money, and amounting in the aggregate, for said wines, liquors, board, lodging and money advanced, to the sum of $1015.” * * * “That the defendant has paid, to apply on said account, by notes and checks, the sum of $851.55, leaving due and unpaid thereon the sum of $163.45, with interest from July 23, 1870,” &c.
Here is a distinct admission, on the record, that the payments were made on the general account, including the liquor, and an attempted application thereof by the plaintiff to the whole account, and the balance claimed to be due is the balance of the whole acconnt. The finding of the referee, in the plaintiff’s favor, that the payments were to be applied on the items for liquor, only, is therefore wholly at variance with the claim of the plaintiff himself.
Neither does the evidence, irrespective of the pleading, justify any such finding. It is true, that the plaintiff swears, in a general way, that the notes and checks were given in settlement of the liquor account; but his own testimony, and that of his witnesses, to the particulars of the transaction, does not justify that conclusion. Take, for instance, the note for $200, which, if paid on general account, is sufficient for the purposes of this case. The plaintiff, in his testimony, undertakes to give the particulars of the whole conversation at the time it was given. It bears date on the 28th of June, 1870. The plaintiff states the circumstances under which it was given, as follows: “On the 28th of June, the defendant came *570 there in the morning; don’t know what day of the week it was. Defendant was alone, and wanted something to drink. I said ‘ Hayes you are owing me a large account, and I want you to settle.’ I had told him so the day before; he said I know I am owing you a large bill, and • they won’t take my check at the bank; I told him he was owing me in the neighborhood of $400. He told me to draw a note' for $200, and he would sign it. I done so, and he signed it in the presence of Joseph Wyles. I told him there was nearly $200 back. No one else in the room. I can’t tell what was figured in.” Joseph Wyles, the person referred to by the plaintiff as being present when the $200 note was made, gives the following account of the transaction; being shown the note, he said: ‘ ‘ This note was drawn by the plaintiff signed by defendant in my presence, about 8 or 9 o’clock a. m. Plaintiff said to defendant, you are running a pretty large bill here, and I must have some money. Defendant said I havn’t got any, but you need not be afraid but I will pay you. If I can’t pay any other way I will sell a house and lot to pay you ; plaintiff said you’ve got money enough without selling a house and lot; sign a note.- Plaintiff then wrote the note and handed it to defendant. Defendant signed his name, and handed it back to plaintiff, and he put it in his book and said there was a good deal more back, besides that. Defendant made no reply; then defendant asked for whiskey; plaintiff set it up and defendant asked me to drink with him.”
These facts do not import a separation of the items of the account, and the giving of the note to apply on so much as was for liquor alone, but a payment on general account. All the other circumstances of the case tend to show the same thing. No part of the account was effaced, or any intimation given, that any payment had been made on any particular items. And the defendant, was by the plaintiff, in the .account which has been set forth, and which must have been made as late as the *571 latter part of July, and after the defendant had concluded his “spree,” credited in general account, against the general account including the meals and cigars. The same, in substance, are the facts in relation to the other payments, according to the plaintiff’s evidence. It is, moreover, a significant fact that, according to the finding of the referee, the payments exceeded, in amount, so much of the account as was for the liquor sold. It was too late, on the trial of this action, and especially after the deliberate admissions and allegations on the record, for the plaintiff to undertake to withdraw these payments from the general account and credit them solely against so much of it as was for liquor sold in violation of law. By the 10th section of the excise law, (Laws of 1857, ch. 628, § 10,) it is provided that no inn, tavern or hotel keeper, who shall trust any person other than those who may be lodgers in his house, for any sort of strong or spirituous liquors or wines, shall be capable of recovering for the same, and that all securities for such debts shall be void, and that the inn, tavern or hotel keeper who shall take such securities with intent to evade this provision shall forfeit double the sum intended to be secured thereby. In this case the plaintiff was a tavern keeper. The defendant was not a lodger at his house, as the referee expressly finds. It is well settled that where an account or claim consists of items, or where there are several debts claimed, some of which are legal charges and others illegal, a general payment must be imputed and applied to the legal, to the exclusion of the illegal charges—to debts lawfully due and not to unlawful claims. (2 Greenl. Ev. § 533. Wright v. Laing, 3 B. & C. 165. Caldwell v. Wentworth, 14 N. H. 431. Bancroft v. Dumate, 21 Verm. 466. Rohan v. Hunson, 11 Cush. 44. Haven v. Hudson, 12 Lond. Ann. R. 660. Duncan v. Helm, 22 id. 418. Smith v. Coopers, 9 Iowa, 76.)
In some of the cases referred to, the question arose *572 on accounts containing items for spirituous liquors unlawfully sold. In this case, the payments credited on the account largely overpaid any valid indebtedness, and they are to be applied in the first instance to that. The extraordinary account of the plaintiff against the defendant is, under the circumstances disclosed in the case, liable to great suspicion as to its honesty and accuracy, and the testimony by which the plaintiff sought to establish its correctness is far from being complete and satisfactory. But as the judgment must be reversed, for the reason before given, it will not be necessary to criticise the evidence in detail.
[Fourth Department, General Term, at Rochester,
April 1, 1873.
Mullin, Talcott and M. D. Smith, Justices.]
Judgment reversed, new trial ordered, costs to abide the event, and another referee ordered to be substituted.