STARR *against* S. and C. ELLIS.

Where the owner of the equity of redemption pays off a mortgage, and takes an assignment of it, he will not be allowed to keep it on foot, to the prejudice of a *bona fide* purchaser under him : nor, in any case, unless some beneficial interest is shown to require it, or the intention to keep up the encumbrance was declared at the time, as the conclusion is, that it was paid off to exonerate the estate.

And where it appears that such a mortgage is fraudulently assigned, and set on foot to injure the plaintiff's title, it will be ordered to be delivered up and cancelled.

ON the 30th *May*, 1812, *Stephen Sanford* mortgaged lot No. 18, in the second ward, in *Albany*, to *James Jordan*, to secure the payment of 1000 dollars. On the third of *January*, 1815, a judgment was duly docketted in favour of *Joseph Palmer*, against *Sanford*, for 14,013 dollars and 68 cents, and which became a lien on lots 17 and 18, owned by *Sanford*, subject to the mortgage. On the 18th of *September*, 1815, *Sanford* mortgaged lot No. 17, bounded east by lot No. 18, to the plaintiff, to secure the payment of a bond for 4680 dollars; and on the 11th of *October*, 1815, *Palmer*, in favour of the plaintiff, released lot No. 17 from the lien of his judgment. Notwithstanding this release, *P.* afterwards issued an execution on his judgment, under which the Sheriff, on the 4th of *January*, 1817, sold both lots to the defendant, *Samuel Ellis*, as the highest bidder, for 1000 dollars. *S. E.*, when he purchased, knew of the mortgage to *Jordan*, and the bill charged, that he knew of the release by *Palmer*, as to lot No. 17, and purchased the lot fraudulently, for the purpose of defeating the plaintiff's mortgage; but this was denied by the defendant in his answer. *S. E.*, on the 27th *March*, 1818, paid off *Jordan's* mortgage, and took a regular assignment of it to himself, and thus became seised

*September 2d and Oct. 18th.*

VOL. VI.            50·

of a perfect title to lot No. 18. He afterwards brought an action of ejectment to obtain possession of lots Nos. 17 and 18, and in *January*, 1819, recovered judgment for lot No. 18, and took possession of it; and the plaintiff took possession of lot No. 17, under his mortgage. *S. E.* afterwards, on the 30th of *June*, 1819, by deed, (reciting the Sheriff's deed,) sold and conveyed to the plaintiff, for 2500 dollars, lot No. 18, and released and quit-claimed all his interest in lot No. 17, and the plaintiff assumed to pay a mortgage by *S. E.* on lot No. 18, to *J. Badeau*, for 1000 dollars.

The bill charged, that it was, at the same time, agreed between them, that *S. E.* should immediately deliver up *Jordan's* mortgage to the plaintiff; but that the defendant has since uniformly refused to do it. That the plaintiff had paid off the mortgage to *Badeau*, and taken a certificate of its discharge, and caused the registry of it to be cancelled, and had offered to deliver the mortgage to the defendant, *S. E.*

The bill, which was filed *September* 15, 1820, *prayed* for a discovery, and that the defendant, *S. E.*, be decreed to assign or deliver up to the plaintiff, to be cancelled, the mortgage to *Jordan*, and to come to an account, and that he be perpetually enjoined from disposing of the mortgage to any other person, or from disturbing the plaintiff in his title, &c., and for general relief.

The defendant, *S. E.*, in his answer, admitted, that he paid *Jordan* the full amount of the mortgage, and took an assignment of it; and alleged, that on the 20th of *May*, 1819, he duly assigned it to *C. E.*, the other defendant, his son, for the consideration of a debt, owing to him for the amount, who claims to hold it as a valid and subsisting lien on lot No. 18. The defendant denied all fraud charged against him in the bill.

*September* 2, 1822. The cause was brought to a hearing on the pleadings and proofs.

*Isaac Hamilton*, for the plaintiff.

*A. Townsend*, for the defendants.

THE CHANCELLOR. The merits of this case turn upon the question, whether the *Jordan* mortgage, which the defendant, *S. E.*, bought in, and afterwards assigned to the defendant, *C. E.*, can be set up against the plaintiff's right and title to lot No. 18.

The object of the bill is to have that mortgage delivered up and cancelled, as being merged, upon the union of the legal and equitable titles in the defendant, *S. Ellis*, when he purchased in *Jordan's* mortgage, and as being since kept on foot, and assigned and set up, in fraud of the plaintiff's title.

1. I see no manner of reason, why the *Jordan* mortgage should not be held to have merged, when it came in union with the equity of redemption held by *S. E.*; nor do I perceive any interest that *S. E.* then had to continue it in his own hands as a subsisting encumbrance. Unless some beneficial interest be shown, to require it to be kept up, or the intention to keep up the charge be immediately and duly declared, the conclusion is, that it was purchased in, or rather paid off and satisfied, in order to exonerate his estate. A Court of equity will never permit it to be kept on foot for the purpose of injuring a subsequent *bona fide* purchaser, under the very party who had thus consolidated in himself the legal and the equitable title. This was the doctrine in the case of *Gardner* v. *Astor ;* (3 *Johns. Ch. Rep.* 53.) and if that doctrine was not then misunderstood, we are entitled to act upon it in the present case.

A Court of equity will keep an encumbrance alive, or consider it extinguished, as will best serve the purposes of justice, and the actual and just intention of the party. It must, at all events, be an innocent purpose, and injurious to no one. In the case of *Lord Compton* v. *Oxenden*, (2

*A Court of equity will keep an encumbrance alive, or consider it extinguished, as may best serve the purposes of justice, and the just intent of the party.*

1822.

STARR
v.
ELLIS.

The union
of the equity
of 'redemption
with the legal
estate, produ-
ces a merger
of the mort-
gage, unless it
is declared to
be kept on foot
for some bene-
ficial purpose.

*Vesey,* jr. 261.) it was admitted to be the general rule, that equity considers the union of the real and equitable estates as a merger, or not as a merger, according to the intention and best interest of the party. The general rule is, that the union of the estates will create a merger, unless there be some beneficial purpose, or some declared intent to prevent it. In *Forbes* v. *Moffatt,* (18 *Vesey,* 384.) which was referred to in *Gardner* v. *Astor,* a mortgage was held not to be merged by union with the fee. There was no actual intention established by act of the party, and it was presumed against the merger, in that case, from the greater advantage in favour of the personal representative. "It is very clear," said the Master of the Rolls, "that a person, becoming entitled to an estate, subject to a charge for his own benefit, may, if he chooses, at once take the estate, and keep up the charge. A Court of equity will sometimes hold a charge extinguished, where it would subsist at law; and, sometimes preserve it, where, at law, it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united. In most instances, it is, with reference to the party himself, of no sort of use to have a charge on his own estate; and, where this is the case, it will be held to sink, unless something shall have been done by him to keep it on foot. If it be perfectly indifferent to the party, whether the charge should or should not subsist, it sinks."

Upon the cases, and upon principle, I think I am bound to hold, that *Jordan's* mortgage sunk, and was extinguished on being got in by the defendant, *S. E.,* who was then owner of the equity of redemption in lot No. 18. He did no act, at the time, showing a declared intention to keep it alive; and why should he? There was no interest of his to require it. In ordinary cases, when the estate has no connexion with other interests, what motive can a man have, who owns the equity of redemption, and purchases in a subsisting mortgage, to keep this mortgage alive in

his own hands, against his own estate? His title was perfect to lot No. 18. There was no claim against it. It could not be of any use, but a mischievous one, as against subsequent purchasers or encumbrances, and for such a purpose, the merger is not to be prevented, nor the charge upheld by the aid of this Court.

But, 2. The facts warrant the charge of a fraudulent combination between the two defendants, to set up the *Jordan* mortgage, to the prejudice of the plaintiff's title to lot No. 18, which he purchased of the defendant, *S. E.* The credit of the answer of *S. E.* is very much shaken by the proofs against the truth of some of its averments; and I am entirely satisfied, that the *Jordan* mortgage has been fraudulently assigned, and set on foot, to injure the plaintiff's title. It was, undoubtedly, the understanding of the plaintiff and the defendant, *S. E.*, at the time of the plaintiff's purchase, that the *Jordan* mortgage was not a subsisting encumbrance, and was considered as cancelled, and the assignment to the son, if even before the purchase, was colourable merely. The marks of fraud are upon every part of this transaction.

I shall, therefore, decree, that the defendants cause *Jordan's* mortgage to be delivered up to be cancelled, and be enjoined, in the mean time, from disposing of it, or making any use of it, in law or equity, in prejudice of the plaintiff's title; and that when the said mortgage shall be delivered to the plaintiff's solicitor, or be deposited with the Register of this Court, to be cancelled, that then the injunction, heretofore issued, be dissolved; and that the defendants pay to the plaintiff his costs of this suit.

Decree accordingly.