ELIZABETH V. B. SMITH, as Executrix, etc., et al., Respondents,
*v.* EDWARD ROBERTS et al., Appellants.

While a merger at law follows upon the union of a greater and a lesser
estate in the same ownership, it does not follow in equity, and estates
will be kept separate where such is the intention of the parties and jus-
tice requires it.

That intention may be gathered, not only from the acts and declarations of
the party, but from a view of the situation as affecting his interests, at
least prior to the presence of some right in a third person.

Until such right intervenes the intention as to merger remains subject to
change, and whatever occurs between the parties interested, tending to
show the intention, is, when the question of merger is in issue, admissible
as part of the *res gestæ*.

A purchase by and conveyance to a mortgagee of an undivided part of the
mortgaged premises, where it does not appear that there was a payment
or merger of the mortgage, or any portion thereof, operates as a release of
the portion conveyed from the lien of the mortgage, leaving it to rest
solely upon the portion unconveyed.

A subsequent mortgagee of the part unconveyed, where the prior mort-
gage is recorded, is chargeable with notice and takes subject to the lien
thereof.

Where such subsequent mortgagee foreclosed his mortgage, making the
prior mortgagee a party defendant, but without setting forth or allud-
ing to the prior mortgage, and obtained the ordinary judgment of fore-
closure and sale, and where by the terms of sale the premises were sold
free and clear of incumbrance, *held*, that the judgment did not constitute
a bar to an action to foreclose the prior mortgage, although the mort-
gagee knew of the judgment and made no effort to have the same
modified or set aside, it not appearing that he was present at or was
cognizant of the manner in which the sale was made.

(Argued February 1, 1883 ; decided March 6, 1883.)

APPEAL by defendant Edward Roberts from a judgment of
the General Term of the Supreme Court, in the first judicial
department, entered upon an order made May 27, 1882, which
affirmed a judgment in favor of plaintiffs, entered upon decision
of the court on trial at Special Term.

The nature of the action and the material facts are stated
in the opinion.

*Jacob F. Miller* for appellants.    Any conversation between
Mr. Benjamin and Mr. Smith, not communicated to Mr.

Roberts, should not be held to affect the latter. (*Foote* v. *Beecher*, 78 N. Y. 155.) By the two deeds from Benjamin and Smith of an undivided one-fourth and an undivided one-half of the mortgaged premises the mortgage debt became merged. (*Shaw* v. *Ellis*, 6 Johns. Ch. 393; *James* v. *Johnson*, id. 417; *James* v. *Morey*, 2 Cow. 303; *Spencer* v. *Cyrault*, 10 N. Y. 202; *Bascom* v. *Smith*, 38 id. 320.) The act of Mr. Smith in receiving the deed containing a clause that the premises were free and clear constituted an estoppel *in pais*. (*Plumb* v. *Cattaraugus Co. Mutual Ins. Co.*, 18 N. Y. 394; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Storrs* v. *Baker*, 6 id. 166, and cases there cited; *Manufacturing & Traders' Ins. Co.* v. *Hazard*, 30 N. Y. 230; *Dezell* v. *Odell*, 3 Hill, 215; *Tilton* v. *Nelson*, 27 Barb. 199.) Edward Smith having been made a party to the foreclosure suit, with an allegation in the complaint that he had, or claimed to have, a lien upon the premises, but which lien if any, was subsequent and subordinate to that of Mr. Roberts, his mortgage was cut off by the decree. (*Domy* v. *Clark*, 16 How. 424, 430; *Frost* v. *Koon*, 30 N. Y. 428; *Mallory* v. *Horan*, 49 id. 116; *Mc-Reynolds* v. *Munn*, 2 Keyes, 214; *Lewis* v. *Smith*, 5 Seld. 502; *Corning* v. *Smith*, 2 id. 82; *Bloomer* v. *Sturges*, 58 N. Y. 174; *Frost* v. *Koon*, 30 id. 428, 444, 446; *Hancock* v. *Hancock*, 22 id. 571; *Emigrant Industrial Association* v. *Goldman*, 75 id. 131.) The judgment in the case of *Roberts* v. *Benjamin and others*, having been made, whereby Mr. Smith was in terms cut off, cannot be attacked collaterally. (*Jenkins* v. *Fahey*, 75 N. Y. 356; *Hunt* v. *Hunt*, 72 id. 218; *Smith* v. *Nelson*, 62 id. 288; *Jordan* v. *Van Epps*, 85 id. 428; *Krekelin* v. *Ritter*, 62 id. 373; *Church* v. *Kidd*, 88 id. 653; *Palmer* v. *Hussey*, 87 id. 306.) Whatever could have been litigated in the suit of *Roberts* v. *Benjamin, Smith and others* these will be held concluded by the judgment. (*Clemens* v. *Clemens*, 37 N. Y. 73; *Stowell* v. *Chamberlain*, 60 id. 276; 2 Smith's Leading Cases, 787.) The petition in the proceedings in bankruptcy having been verified long after the mortgage was made to Mr. Roberts, the settlements in it were

*ex parte*, and mere admissions at most. They should not be admitted as against Mr. Roberts, a *bona fide* mortgagee. (*Foote* v. *Beecher*, 78 N. Y. 155 ; *Osgood* v. *Manhattan Co.*, 3 Cow. 612; Stephens on Evidence [Reynolds' ed.], 48 ; *Burlingham* v. *Robbins*, 21 Barb. 329 ; *Redfield* v. *Carpenter*, 13 Johns. 350 ; *Irvine* v. *Cook*, 15 id. 239; *Jones* v. *Hurlbut*, 39 Barb. 303 ; *Phillips* v. *Thompson*, 7 Johns. Ch. 131 ; *White* v. *Chouteau*, 10 Barb. 202 ; *Carter* v. *Buchanan*, 9 Ga. 539 ; 2 Story's Eq. Jur., § 1225 ; *Bailey* v. *Greenleaf*, 7 Wheat. 46 ; *Wilson* v. *Boerum*, 15 Johns. 289 ; *Frost* v. *Coon*, 30 N. Y. 428 ; *Coyne* v. *Weaver*, 84 id. 392.)

*C. E. Lydecker* for respondents. The whole estate of the mortgagor and not merely a part of it shall pass to the mortgagee before there can be a merger. (*James* v. *Morey*, 2 Cow. 316 ; *Casey* v. *Buttolph*, 12 Barb. 637 ; *Klock* v. *Conkhite*, 1 Hill, 107 ; *Knickerbocker* v. *Boutwell*, 2 Sandf. Ch. 219 ; *Sahler* v. *Singer*, 44 Barb. 606.) Where there is a lien on different parcels of land for the payment of the same debt, and some of these lands still belong to the person who, in equity and justice, ought to pay such debt, and other parcels have been transferred by him to other persons, his lands shall be first charged. (*Skeel* v. *Spraker*, 8 Paige, 195 ; *Crafts* v. *Aspinwall*, 2 N. Y. 289.) The fact that this was a mortgage, not of a particular parcel, but of an undivided part or portion, as was also the deed, which, it is claimed, effected an extinguishment of the mortgage, does not take the case out of the rule. (Code of Civ. Pro., § 1540 ; 2 Edm. 327, §§ 8 and 9 ; *Westervelt* v. *Haff*, 2 Sandf. 98.) Whether there is a merger of a less estate in a greater depends upon the express or implied intention of the person in whom the estates unite. (*Bostwick* v. *Frankfield*, 74 N. Y. 207.) The judgment of foreclosure at Roberts' suit in 1876 could have no effect upon Smith's prior mortgage; although Smith was a party defendant to the action, Smith was not bound to appear in it. (*Emigrant Ind. Savings B'k* v. *Goldman*, 45 N. Y. 127.)

FINCH, J.    This action was brought for the forclosure of a mortgage to secure $3,000 executed by defendant Benjamin to plaintiff's testator.    The mortgage was produced and proved, as was also the death of Smith, the mortgagee ; and the issue of letters testamentary to the plaintiff ; with which proof she rested her case.    The defendant has pleaded three defenses, as to which the burden of proof was upon him.    The first two of these were payment and an extinguishment of the mortgage by merger.    The proof adduced consisted of a series of transactions between Benjamin and Smith, and the inferences sought to be derived from their contracts and conveyances.    Benjamin was originally the owner of the whole tract, which consisted of fifty-two lots, and in October, 1863, mortgaged the entire property to the testator for $6,500.    The next month a contract was entered into by the parties, which gave to Smith the right at his option to become the purchaser of an undivided half at any time within three years at the same price as the principal of the mortgage, upon condition of his also refunding the interest which should be paid on that security.    In June, 1865, Benjamin and his wife conveyed to Smith, by an absolute deed, an undivided fourth part of such premises.    This appears to have been a separate transaction, unconnected with the optional contract, and not a part performance of its terms, since it recites that the interest conveyed was incumbered by the mortgage on the whole premises, and was subject to the contract of sale.    The consideration for this purchase was $3,500, which the grantor acknowledges to have received.    There is no evidence to the contrary.    There is only the argument that Smith would not be likely to pay the full consideration, and leave his one-fourth subject to the lien of his mortgage.    But if the sole practical effect was to release the lien upon the one-fourth, and leave it operative upon the three-fourths remaining in the ownership of Benjamin, which we shall presently see must have been the case, the argument loses its force, and no ground for an inference which contradicts the acknowledgment in the deed remains.    On the same day of the execution of this deed, Benjamin executed a second mortgage to Smith for $3,000,

upon the undivided three-quarters remaining in the former's ownership, and which is the mortgage now sought to be foreclosed. There is no room for rational doubt that this mortgage, though made on the same day with the deed, was executed and delivered after that instrument, for it covers the three-fourths remaining, and the deed which recites the existence of the other incumbrances makes no mention of this, but on the contrary warrants that there are no others. In February, 1867, Smith exercised his option to become the purchaser of the undivided half, and that arrangement was carried out. Benjamin conveyed for an expressed consideration of $7,865 which Smith paid by canceling the mortgage of $6,500, and refunding or crediting the accrued interest of $1,365. This consideration the appellant seeks to account for in a different way. He charges Benjamin's three-fourths with only three-fourths of the mortgage, assuming, what is not at all proved, that the other fourth of the mortgage was deducted from the $3,500 paid for one-fourth of the land. That would leave a sum of $4,875, to which, adding the mortgage of $3,000, we have a sum of $7,875, or only $10 more than the consideration named in the deed. There is here almost a coincidence of figures, and yet a difference which it will hardly do to solve by some imaginary expense, or unproved error in the computation of interest. And we are required to assume without proof, and against the written evidence, that one-fourth of the large mortgage was in fact deducted from the consideration of one-fourth of the land. We say against the written evidence, because Benjamin's deed of an undivided one-quarter carefully recites that "it is understood that the *whole* of the above-mentioned premises are covered by a mortgage for $6,500," etc., and carefully describes the incumbrance. Such a statement amounts to an acknowledgment of a subsisting lien for that full amount, and is inconsistent with the theory that one-fourth of that mortgage was in fact at such date extinguished. If that had been true, the recital would have declared that an undivided three-quarters of the premises described as a whole were covered by a mortgage for $4,875. There was, therefore, no evidence of payment of the mortgage for $3,000,

and no fact established which even tended to prove such payment. The burden resting upon the defendant was not borne, and we may disregard on this issue the letters of Benjamin introduced in evidence, and his schedules in bankruptcy, which were received under objection, since without them the result was necessary and certain, and could not have been different. We are entirely satisfied with the conclusion that the mortgage was not in fact paid.

The second defense was founded upon the doctrine of merger. It is claimed that when the mortgagee of the undivided three-quarters took the title to the undivided half his lesser estate was drowned in the greater, and his mortgage extinguished at least *pro tanto*. But while a merger at law follows inevitably upon the union of a greater and lesser estate in the same ownership it does not so follow in equity. There the doctrine is not favored, and the estates will be kept separate where such is the intention of the parties, and justice requires it, and that intention will be gathered not only from the acts and declarations of the party, but from a view of the situation as affecting his interest, at least prior to the presence of some third person's right. (*Moffatt* v. *Hammond*, 18 Vesey, 385; *Gardner* v. *Astor*, 3 Johns. Ch. 53; *James* v. *Morey*, 2 Cow. 246; *Starr* v. *Ellis*, 6 Johns. Ch. 393; *Champney* v. *Coope*, 32 N. Y. 543; *Sheldon* v. *Edwards*, 35 id. 279.) The evidence in the case before us indicates very strongly both the intention of Smith and the understanding of Benjamin that no merger should take place, and the mortgage remain a subsisting security and a lien upon the one-quarter owned by Benjamin. The evidence relied on is two-fold. It is beyond contradiction that the interest of Smith was strongly against a merger, and that circumstance indicates his intention that none should occur. And then the letters of Benjamin, recognizing the mortgage as a subsisting debt, are introduced. All of them, except two, were written and received before the defendant Roberts took his mortgage. Those two relate only to pending bankruptcy proceedings, and could neither benefit the one party nor harm the other. The defendants' objection was

aimed at all the letters without distinguishing between them, and the objection was properly overruled, since all the letters written before Roberts took his mortgage were a part of the *res gestæ* upon the question of merger. That question was one of intention and remained open, subject to change, so long as no other right intervened. Whatever occurred between the parties alone interested during this period, indicating their intention, as it respects a merger or none, is the very matter in issue raised by the plea and the proof of the defendant. In *James* v. *Morey* (*supra*), it was said of the party against whom a merger was urged that "until he made a disposition of the property, and until some person acquired an interest, he was at perfect liberty to consider the mortgage merged or not as might be most beneficial;" and it was added that his intent did not become fixed and unchangeable until some one acquired an interest, and thereby a right to draw such intent in question. Whatever occurred in such interval between the parties interested tending to show that a merger was or was not intended was admissible upon that issue as a part of the *res gestæ*. The intention to be sought out was not unchangeably fixed until the rights of Roberts intervened, and necessarily ran over the whole preceding period. The letters of Benjamin received by Smith were the dealing of the parties relating to the mortgage, and admissible as facts disclosing the intention and understanding of both.

We need not consider the admissibility of Benjamin's schedule in bankruptcy. Granting it to have been inadmissible, the evidence without it admitted of no other conclusion than that a merger had not taken place, and made a contrary conclusion impossible. Its admission, therefore, did no harm.

There was thus neither a payment nor a merger of the mortgage in suit. The effect of the conveyance by Benjamin to Smith of the undivided half was necessarily, therefore, simply that of a release of lien. In *Clift* v. *White* (12 N. Y. 526), such a purchase where no merger was intended was said to have the same effect as a release by the owner of a mortgage of part of the land covered by it. That was the result here.

If the half bought by Smith had been purchased by a stranger, Smith at the request or with the assent of Benjamin might have released that half from the lien of his mortgage without at all lessening its amount, or putting in peril its lien on the remaining quarter. The same result followed upon Smith's purchase for himself, since there was neither payment nor merger, and, therefore, no extinguishment even *pro tanto* of the mortgage debt. As Smith could have no mortgage on his own property, and what he bought was paid for irrespective of the mortgage, the transaction operated solely to release one-half from the mortgage lien, leaving it to rest only upon the unconveyed one-quarter, and so it is clear both parties understood and intended.

The defendant took his subsequent mortgage upon the same quarter after all these transactions, and has suffered no wrong. The record gave him notice of the existence of this prior mortgage, and he took subject to its lien. (*Clift* v. *White*, *supra*.)

But a third defense is pleaded. The defendant commenced an action to foreclose his mortgage, and made Smith a party defendant. In his complaint he did not set out the prior mortgage, or allude to it at all. The only allegation affecting Smith was the usual and ordinary one that certain of the defendants had or claimed an interest in the mortgaged premises, but their rights accrued subsequent to the mortgage sought to be foreclosed. That action proceeded to judgment and sale, and the property was bid in by the defendant. It is found that by the terms of sale the premises were sold free and clear of all liens and incumbrances, and that Smith knew of the judgment and made no effort to have the same modified or set aside. It is not found and does not appear that he was present at the sale, or cognizant of the manner in which it was made. It is now said that this judgment constitutes a bar. We have held the contrary. (*Emigrant Sav. Bank* v. *Goldman*, 75 N. Y. 137.) The expressions in the opinion in that case relating to the possible effect upon Goldman's equities of a sale discharged from his lien by his consent, and so swelling the surplus have

no pertinency here. Goldman had a mechanic's lien which was prior to the mortgage lien enforced by sale, and was made a party and gave a stipulation waiving service of papers. He stood before the court insisting that he had waived his priority as against the judgment of sale, had assented to be treated as a subsequent incumbrancer, and so had a right in the surplus realized. It was, therefore, said that if the proofs had shown a sale made on that theory, with his priority of lien gone, he would have had an equity in the surplus. Precisely the reverse is the case here. The incumbrancer is seeking to enforce his priority and has never surrendered or waived it.

We have examined the other objections pointed out on the argument without finding any ground for a reversal.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.