AMOS C. SANFORD, Respondent, *v.* SARAH J. VAN
ARSDALL and JAMES W. VAN ARSDALL, her
Husband, Appellants, Impleaded with Others.

*Order of sale of mortgaged premises, the title to part of which has been acquired by the mortgagee — application of payments as between several debts.*

A mortgagee who, subsequent to his having acquired the mortgages, is, by agreement between the owner and a lessee of the property, made the payee of the rents, payable under a lease thereof, to be applied in reduction of the mortgage debt, and who thereafter receives from the grantee of the owner of the premises covered by such mortgage a deed of conveyance of the one undivided half thereof (such grantee of the owner having acquired title to such one-half under a warranty deed, " excepting a mortgage by the parties of the first part, * * * and another held by Alexander Howell, the one-half of all of which mortgages, of the principal and interest now unpaid thereon, the party of the second part agrees to pay "), is not entitled, in an action brought for the foreclosure of one of such mortgages, to a judgment that the same shall be paid wholly from the proceeds of the sale of the one-half of the mortgaged premises still owned and in possession of the mortgagor.

*Smith* v. *Roberts* (91 N. Y., 477) distinguished.

The installments of rent paid to the mortgagee, under the terms of the lease, were credited to the mortgagor, but were not applied upon any particular indebtedness until after the beginning of the action brought to foreclose the mortgage.

*Held,* that such election by the mortgagee was too late; that, after the commencement of the suit for the foreclosure of the mortgage, it became the duty of the court, no application thereof having been theretofore made, to itself, then, make the application of the payments received by the mortgagee.

That the application which would be made by the court in a case where, as in the present case, each mortgage held by the plaintiff was upon the same real estate as the others, and there were no intervening rights of third parties, would be in extinguishment of the liens according to the priority of the dates at which they were respectively created and at which they matured.

There is no difference in principle, in this respect, in the case of debts which are secured and those which are unsecured.

The right of a creditor, to apply a payment made by his debtor, exists only in the case of voluntary payments, and has no application to moneys received from a sale on foreclosure; and the same rule applies where the money is received from a third person who, in making the payment thereof, does not act as the agent of the debtor, but as his debtor.

Appeal by the defendants from a judgment rendered at a Special Term of the Supreme Court, held in Ontario county, and entered in the office of the clerk of Ontario county on the 6th day of December, 1887.

FIFTH DEPARTMENT, JUNE TERM, 1889.

The action was brought to foreclose a mortgage and fo a sale of the mortgaged premises.

*H. R. Durfee*, for the respondent.

*John Gillette*, for the appellant.

MACOMBER, J. :

The defendant, Sarah J. Van Arsdall, became a purchaser of the mortgaged premises October 23, 1872, and, by the terms of the deed to her, she agreed to pay the incumbrances then existing thereon, which consisted of a $1,000 mortgage executed by one Kellogg and wife to Bronson, and a mortgage, dated October 27, 1859 (the one involved in this action), executed by one Dewey and wife to Birch to secure the payment of $2,000.

The Birch mortgage was assigned to the plaintiff January 15, 1877. On the 13th day of March, 1873, the defendant and her husband executed a bond and mortgage to one Runyan in the sum of $1,000, which are now held by the plaintiff. On the 28th day of April, 1875, the defendants executed to the plaintiff a mortgage in the sum of $1,500. Both of the last-named mortgages contained, provisions for insurance for the benefit of the mortgagees. In the month of May, 1876, the property, which consisted of a grist-mill, was leased by the defendant Sarah J. Van Arsdall to Powell & Youngs, who paid their rent thereafter to the plaintiff under general directions from the lessor. On the 6th day of February, 1877, the lease to Powell & Youngs was assigned by this defendant in writing to the plaintiff, and payments were made by the tenants thereafter to the plaintiff as had been done before the execution of the assignment of the lease. The lease to Powell & Youngs having expired or terminated, the mill property was leased by the defendant Sarah J. Van Arsdall to Jay Dutcher May 2, 1879. In September, 1880, she leased the same to Alfred Poyneer. The rent in both leases last named was made payable, by the terms thereof, to the plaintiff for the purpose of being applied upon the securities which he held against the property. After the expiration of the above-named leases the mill was conducted by the defendant Sarah J. Van Arsdall and by her son Emlon A. Van Arsdall. In the month of January, 1882, this defendant and her husband conveyed the undivided one-half of

the mortgaged premises to their son Emlon A. Van Arsdall. On the 6th day of August, 1885, Emlon A. Van Arsdall conveyed his undivided half to the plaintiff. It is thus seen that the plaintiff had possessed himself of the Birch mortgage of 1859, of the Runyan mortgage of 1873, and still held the mortgage to himself of April, 1875, and had received in August, 1886, a deed of the undivided half of the premises covered by each of these mortgages.

The learned trial judge has decided : First. That the Birch mortgage, now in process of foreclosure in this suit, shall be made wholly out of the sale of the remaining one-half, still owned and in the possession of the defendant. The amount adjudged to be due and unpaid thereon is $250, with interest from the time that the instruments were assigned to the plaintiff in January, 1877. Secondly. The court has decided that sundry payments, amounting to much more than the sum found due upon this mortgage, which had been made between the year 1877 and the year 1885, when this action was begun, were applicable, not to the mortgage in suit, but to the $1,500 mortgage of April, 1875. It is these two conclusions of the learned trial court that present the interesting questions on this appeal. Are the lands now remaining unconveyed and in possession of the defendant liable for the whole of the unpaid mortgaged debt represented by the bond and mortgage in this action? In the deed to the defendant of the whole of these mortgaged premises the grantee assumed the payment of this mortgage debt, together with that owing to Bronson. There is not made, however, in this action, any personal claim against her for any deficiency which may arise upon the sale of the mortgaged premises. Her personal obligations, therefore, as contained in the deed to her, can properly be left out of consideration. In the deed of the undivided half of the mortgaged premises to Emlon A. Van Arsdall there was inserted a covenant " that the premises thus conveyed in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, will forever warrant and defend against any person whomsoever lawfully claiming the same, or any part thereof, excepting a mortgage by the parties of the first part, of April 28, 1875, to Amos C. Sanford, administrator, for the fifteen hundred dollars; another of the same parties of March 13, 1873, to Vincent L. Runyan, given for one thousand dollars; another of Edmond B.

Dewey and wife, October 27, 1859, to Francis Birch, and another held by Alexander Howell; the one-half of all of which mortgages of the principal and interest now unpaid thereon the said party of the second part agrees to pay."

The case mainly relied upon to support this decision is that of *Smith* v. *Roberts* (91 N. Y., 470). It is broadly stated in that case that a purchase by and conveyance to a mortgagee of an undivided part of the mortgaged premises, where it does not appear that there is a payment or merger of a mortgage or any portion thereof, operates as a release of the portion conveyed from the lien of the mortgage, leaving it to rest solely upon the portion unconveyed. In that case, however, the conveyance was made directly by the mortgagor to the mortgagee. There still remained the mortgagor's obligation, and there was no agreement or understanding that the indebtedness should be reduced by the value of the premises conveyed. On the contrary, it was shown, and was a matter of strong comment by the learned judge writing the opinion, that there was, in fact, an actual, valuable and sufficient consideration for the conveyance of the undivided part of the mortgaged lands to the mortgagee arising outside of the particular indebtedness secured by the mortgagee. Hence it is that the distinguishing features of that case are: (1.) A conveyance by the mortgagor to the mortgagee of a portion of the mortgaged premises. (2.) The absence of an agreement that it should be *pro tanto* a payment. (3.) An actual consideration for the conveyance outside of the mortgage.

In the case at bar, however, there has been made only a conveyance by the son of his undivided half of the mortgaged premises to the plaintiff. The defendant has not consented to any conveyance thereof. The deed from Emlon A. Van Arsdall was an act entirely independent of the defendant. These are the features of this case distinguishing it from those of *Smith* v. *Roberts*. Indeed, in the case of *Smith* v. *Roberts* the court was extremely careful in its illustrations and argument to indicate (p. 477) that the rule there enunciated could only prevail where the owner of the mortgaged premises had actually conveyed the same or had consented to a release of the portion thereof from a lien of the mortgage by the mortgagee.

The case before us, on the contrary, shows that the defendant, in conveying the undivided half to her son, maintained the lien for one half of the mortgage debt of this particular mortgage with others upon the property so conveyed. She covenanted for an unincumbered title except as to this and other liens particularly named. The grantee thereunder, accepting the same with such reservation added thereto, personally covenanted thereby to pay one half of all the mortgages existing on the entire premises. The conveyance of Emlon A. Van Arsdall being without the procurement or even knowledge, so far as is shown, of the defendant, she cannot be said to have done any act releasing any portion of the mortgaged premises from the lien thereof, and charging the whole of such lien upon the part still retained by her. The case, *Matter of Wilbur* v. *Warren* (104 N. Y. 192), has a strong application to the peculiar facts developed in this action. It is there distinctly held that one who purchases land subject to a mortgage makes the land thereby a primary fund for the payment of the mortgaged debt, even though the deed contained a covenant on the part of the grantee to pay such debt, the covenant being designed only to indemnify the grantor against the contingency that the land may not bring enough to pay such debt. Emlon A. Van Arsdall has covenated to pay his half of this among other debts; and the deed to him also expressly preserved the lien to the extent of one half of the indebtedness of each of these several mortgages. Under these circumstances, it was not possible for Emlon A. Van Arsdall and the holder of any of these outstanding mortgages to make any arrangement by which the defendant's right to insist upon an equal charge of all the lands to extinguish the liens should be waived without her consent thereto affirmatively expressed. This result necessarily leads to a reversal of the judgment and to a new trial of the case. But there remains another important element contained in the decision which it is incumbent upon us to decide, lest upon the new trial the same error might be committed.

After the assignment of the Birch mortgage to the plaintiff, which was on January 15, 1877, and for eight months prior thereto, the grist-mill was leased to sundry tenants, who, either by the terms of the leases or by a verbal arrangement, were permitted to pay the rent thereof to the plaintiff, who held the several mortgages already

mentioned. Only one of such installments of rent was paid before the assignment of the mortgage in suit was made to the plaintiff. After such assignment payments were made from time to time by the tenants directly to the plaintiff, and they were credited, apparently, to the defendant, but not upon any particular indebtedness. These payments, after the assignment of the mortgage in question (the Birch mortgage), came to more in amount than the sum total remaining unpaid upon such mortgage at the time of the assignment thereof to the plaintiff. The first of such payments was made in February 1877, and the last in October, 1881.

The learned trial judge has found that no payments were made upon the mortgage now sought to be foreclosed, but the payments which were made, as above mentioned, were made upon and towards the extinguishment of the $1,500 mortgage which had been executed by the defendant and her husband directly to the plaintiff. There is such evidence to support the conclusion of the trial judge in his finding, that no application of payments was made by the debtor himself, as that we should hesitate to differ from him upon that subject, considering the great advantage in his favor of being confronted personally by the witness on that subject. This right of a debtor to determine among several debts which he owes to a creditor upon which shall be applied a payment is undoubted and undisputed. The money or property which he applies being his own, he has the right to say, before parting with it, or at the time of parting with it, which debt or portion thereof it shall extinguish. In the absence of such election at the time of payment, the right of the creditor to apply it as he sees fit upon any item of indebtedness which he holds against the debtor is equally well established by the adjudged cases. Under what circumstances and under what limitations this right shall be exercised has been a prolific subject of discussion in numerous cases. These have been well collated by Munger in his work on Payments, but it would not be profitable to undertake to reconcile their conflicting utterances. This authority says : " From such a clashing of the cases it is apparent that no fixed rule can be deduced. It is entirely clear that the creditor is not required to form his decision at the moment of receiving the payment, but as soon as we go beyond that the ground begins to lose its firmness and our path is beset with difficulties." An interesting

discussion of the question appears in the case of *Taylor* v. *Coleman* (20 Texas, 772). While admitting that the rule had been generally held to be as above stated, it was held that the application of payments deferred until after the beginning of the action was too late, and that it then became the duty of the court to make the application. This seems to be a just and reasonable rule, though it must be admitted that there are loose cases which contain the assertion that a creditor may exercise this power at any time before the day of trial.

Applying this rule to the facts before us, it appears that the plaintiff is not entitled to make the application of the several payments which he now finds it convenient to make upon his debt. He testified that the indorsements upon the bond accompanying the $1,500 mortgage were not made until after this action had been begun for some length of time. In the suit to foreclose the mortgage his counsel seemed to have proceeded upon the hypothesis that no act had been done by the parties affecting the extent of the lien of this mortgage since the time of the assignment of it to the plaintiff. It is apparent, however, that on reception of the answer, which set up payment, the plaintiff undertook to avoid the effect of the evidence, which he knew would be given, and thus anticipate the decision of the court. In this respect we think he was too late in his election. There is no evidence to show that he had made any entry of these several items in his book, or had done any act showing an application of them to the extinguishment of this particular indebtedness until after this suit was at issue. While not prepared to lay down any general rule upon this subject, we do hold that the failure of the plaintiff to make an application of any of these payments for the period of eight years after they began to be received, and not making any such application until after the action was brought and the answer was served, deprived him of the right to make any election at all so as to affect the result of this action. As Judge TALCOTT holds in *Huffstater* v. *Hayes* (64 Barb., 573), it is too late, after the creditor has kept an account in a general debit and credit form, to attempt, for the first time, upon the trial of the cause, to divide up the items and apply the payments to different classes.

This mortgage was originally $2,000, and the computation by which the amount was ascertained at the time of the beginning of

the action must have been quite complicated. It did not present a case like an independent cause of action represented, for instance, by a piece of commercial paper. Without taking any action one way or another, the plaintiff assumed that the amount unpaid when he received the mortgage still remained unpaid; yet he had not reduced any other of the several debts owing to him by the defendant. When, therefore, he brought his action he devolved the duty upon the court to ascertain where these several payments should be applied. It would be extremely unsafe, under the peculiar circumstances disclosed in this action, to permit a party to exercise his right after the action was brought. The power of applying the rule governing payments given by the court is exercised in favor of extinguishing a first indebtedness in cases where all of the several items of indebtedness rest upon the same security and the rights of sureties and others are not involved. In this case each mortgage held by the plaintiff was upon the same real estate as the others and there are no rights of third parties intervening. The law, therefore, would immediately apply the payments made to the extinguishment of the lien first created and first maturing. There is no difference in principle in the case of secured debts and those which are unsecured. (See the decision of the master of rolls in *Devaynes* v. *Noble,* 1 Mer., 584–610, commonly spoken of as Clayton's case, which has received general approbation by the courts of England and in this country since its rendition in the year 1816.)

But there is another reason for holding that it was not competent for the plaintiff to apply the payments under the peculiar circumstances shown in this action otherwise than in the extinguishment of his claims in their order of maturity. The several payments already mentioned, and which the plaintiff has attempted to apply upon the $1,500 mortgage, were not made by the defendant in person nor by any special agent sent to carry the money or property to the plaintiff. They were made by the tenants of the mortgaged premises from time to time directly to the plaintiff, though under a general arrangement, made either in the lease or verbally, that they should thus pay the amount of their rents. The defendant had no control over the time or mode of payment except as the same were determined by the leases. In point of fact she seems to have had nothing to do with the running up of the account from the time

that the plaintiff took the assignment of the Birch mortgage. The right of a creditor to apply a payment made by his debtor applies only to voluntary payments, and not to moneys received from a sale or foreclosure. (*Orleans County National Bank* v. *Moore*, 48 Hun, 70; affirmed by Ct. of App. in 112 N. Y., 543.) In analogy to this principle there appears to be no good reason why the plaintiff should be permitted arbitrarily to apply payments which he has collected from these parties though without suit. Had the several tenants been agents of the defendant this question would have an entirely different aspect, but they were not. They were her debtors.

Under these circumstances, the rule that permits the creditor to make the application of payments, in the absence of the exercise of that power by the debtor at the time of the payments, is inapplicable; on the contrary, the rule should require him to make the application which circumstances show would be most favorable to the debtor. The defendant had a right to assume that the plaintiff would apply the several sums so paid to him in the extinguishment of the indebtedness in its order.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concurred.

Judgment reversed and new trial granted, with costs to appellant to abide the final award of costs.