(30 App. Div. 294.)

BADGER et al. v. SUTTON et al.

(Supreme Court, Appellate Division, Second Department. May 24, 1898.)

1. CORPORATE BONDS—LIEN.

Where a corporation issues only a portion of a series of bonds authorized by a trust mortgage executed to secure the same, the holders of those actually issued are not confined, for their security, to a mere aliquot share of the mortgaged property, equal to the proportion their bonds bear to the whole issue authorized, but are entitled to the entire proceeds of the property, so far as necessary to secure their claims.

2. COMMON-LAW RECEIVER—POWERS.
     If, after a general assignment by a corporation, its creditors bring an action, in aid thereof, to have prior conveyances by the corporation set aside as fraudulent, a permanent common-law receiver appointed therein has the same rights in that connection as the assignee would have had if no receiver had been appointed.

3. SAME—RIGHTS IN PROPERTY FRAUDULENTLY CONVEYED.
     A corporation made a conveyance of land, which, in an action brought by its creditors in aid of a general assignment thereafter made by it, was declared to be void, as in fraud of the creditors, and a permanent common-law receiver was appointed. The fraudulent grantee had in the meantime issued bonds, secured by a mortgage on the land, in excess of its value, and delivered a part of them to the grantor, before its assignment, in payment for the land, and a part to other parties. *Held*, that the receiver was entitled to also retain the bonds issued to his assignor, in order to protect his lien, and share pro rata in the actual security of the mortgage; the other bondholders, in the absence of any special equity, being entitled only to their aliquot shares in the security, equal to the proportion borne by their bonds to the total actual issue.

4. SAME.
     The receiver held other bonds issued by the corporation in payment for other property, not affected by the mortgage, and which was by the decree directed to be transferred back. *Held*, that he could not have them and the property too, but he was entitled to hold them as security to the extent of the value of such part of the property as the corporation failed to return to him.

5. SAME—PAYMENT OF LOAN—LIEN.
     The corporation had issued other bonds of the same series, as collateral to notes which it had discounted; and the receiver, with the approval of the court, paid off the loan, and took up the bonds. *Held*, that he was entitled to a lien for the amount thus paid, with interest.

Appeal from special term, New York county.

Action by Theodore Badger and Willard Winslow against Charles T. Sutton and others. Austin B. Fletcher, the receiver appointed in the above-entitled action for a determination of the rights of the respective parties, claimed liens on the real estate in his hands as receiver under the judgment in the action. From an order confirming the report of a referee, and determining the several liens and their priorities, the receiver appeals. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

John Jay McKelvey, for appellant.

Wilson Brown, Jr., John M. Digney, J. Alvord Peck, and Frederic S. Barnum, for respondents.

CULLEN, J. John W. Young, Albert J. Young, and Irving W. Young were co-partners, under the name of John W. Young & Sons, carrying on a lumber, coal, and mill business at White Plains, N. Y. In July, 1894, the firm, being embarrassed financially, organized a corporation with the name of the John W. Young & Sons Company. The firm conveyed all its real estate to this company, and also caused to be conveyed to it certain other real estate purchased at a sale made by John H. Clapp, referee. In consideration of such conveyance, the corporation issued to the firm its entire capital stock, consisting of 5,000 shares of $100 each, with the exception of 2 shares issued to outside parties to qualify them as directors. At this time

a foreign corporation, named the Tuckahoe Lumber & Coal Company, was carrying on business in the county of Westchester, and was the owner of certain real estate there. The exact character and nature of the connection between this corporation and the firm of John W. Young & Sons does not appear in the record before us, but we may assume that the company was in some manner controlled by the firm. On July 26, 1894, the Tuckahoe Company conveyed its real estate to the new corporation, John W. Young & Sons Company. In August, 1894, the John W. Young & Sons Company executed to the State Trust Company, as trustee, a mortgage of the real estate so conveyed to it, to secure the payment of negotiable bonds to be issued, to the aggregate amount of $200,000. Twenty thousand dollars in amount of these bonds were issued to the Tuckahoe Company in payment for the real estate conveyed by that company. On February 20, 1895, the firm of John W. Young & Sons transferred all its stock on hand, and personal property, except the book accounts, to the new corporation, and in payment therefor received bonds of the par value of $112,000. On the same day the firm executed a general assignment for the benefit of creditors to Charles T. Sutton, as assignee. On the 19th day of February, 1895, the Tuckahoe Lumber & Coal Company made a general assignment for the benefit of creditors to the same Charles T. Sutton, as assignee. Under these two assignments, Sutton, as assignee, received the shares of the capital stock in the new corporation which had been issued to the firm, and two lots of the mortgage bonds,—one of $112,000, issued in payment of the merchandise stock of the firm, and the other of $20,000, paid the Tuckahoe Company for its real estate. The plaintiffs, Badger and Winslow, who were creditors of the firm of John W. Young & Sons, brought this action in aid of the assignment by that firm to Sutton, to have the transfers of the real estate and firm assets to the corporation, as well as certain other conveyances made to individual parties, declared fraudulent and void as against Sutton, assignee, and to require the property to be transferred to the assignee for distribution, pursuant to the terms of the general assignment. In this action, Austin B. Fletcher was appointed temporary receiver of all the property described in the complaint. The Tuckahoe Lumber & Coal Company appears not to have been a party to the action at the time it was originally instituted. While the litigation was pending, the parties made a stipulation for its determination. This stipulation provided for making the Tuckahoe Company and its assignee parties to the action, and substantially for the entry of a judgment declaring the transfer by that company and by the firm of John W. Young & Sons to the new corporation fraudulent and void as against the assignee. Judgment was entered in the action to that effect. By the judgment, Fletcher was continued as permanent receiver of the assigned property. He was directed to convert the property, and, after paying the expenses of the litigation, distribute the proceeds in accordance with the terms of the general assignment to Sutton. Under this judgment the receiver acquired possession of the property, and on December 11, 1896, filed his petition, praying that he be author-

ized to sell the property free of liens, and that the court should as-
certain and determine the amount and validity of the liens on the
property, and direct their payment out of the proceeds of the sale.
On this petition an order of reference was made.  The referee made
his report, which was confirmed by the court at special term, and
from the order of confirmation this appeal is taken.

No objection is made as to the regularity of the proceeding in-
stituted by the receiver, or the power of the court to determine in
that proceeding the rights of the various lienors.  We shall there-
fore confine our consideration to the question of whether those rights
have been properly determined and adjusted by the order of the
special term.  At the outset of our inquiry, it is necessary to de-
fine the character of the receivership created by the judgment.  The
learned referee seems to have been of the opinion that Fletcher was
the receiver of the John W. Young & Sons Company.  This is
an erroneous view.  Fletcher is a common-law receiver of certain
specified property, appointed by the court by virtue of its inherent
powers as a court of equity.  Keeney v. Insurance Co., 71 N. Y.
396.  The fact that the receiver, in certain papers, describes him-
self as receiver of the John W. Young & Sons Company, and his
belief that he was such receiver, if he had that belief, do not affect
the question.  The character of the receivership must be determined
by the terms of the judgment, and the nature of the action in
which it was rendered.  The court had not the power in this action
to appoint a receiver of the John W. Young & Sons Company,
nor did it assume to make such an appointment.  This view disposes
of the claim that the judgment recovered by the Loyal Hanna Coal
& Coke Company against Austin B. Fletcher, as receiver of the
John W. Young & Sons Company, constitutes any lien on the land
in the hands of the receiver.  If the plaintiff in that judgment
has any special equity which entitles him to payment by the re-
ceiver as an expense of the receivership, it may make its application
to the court for that purpose.

The most serious and important question is as to the right of
the receiver to hold the bonds received by him as parts of the as-
signed estates of the firm of John W. Young & Sons, and to share
in the mortgage security to the extent of those bonds.  If the mort-
gaged property was worth as much or more than the amount of
the mortgage bonds, the question would be of no practical con-
sequence.  While the property has not as yet been sold, still all
parties seem to assume that there is little prospect of the sale re-
alizing any such amount.  If a trust mortgage of the character of
the one before us is to be considered as giving to the holder of
each bond, as security for its payment, only an aliquot share of the
mortgaged property, equal to the proportion that his bond bears
to the whole issue authorized by the mortgage, the question would
be one easier of solution.  But I know of no authority for such a
proposition.  The universal practice has been to the contrary.  If
in fact but part of the bonds authorized by a mortgage have been
issued, the holders of those bonds are entitled to the whole proceeds
of the mortgage property, so far as may be necessary to satisfy their

claims. Therefore, while the mortgagor has the right, in the absence of any provision in the mortgage to the contrary, to issue all the bonds, either to pay creditors, or for property sold or moneys advanced to it, if it does not do so it is a piece of good fortune which inures to the benefit of the holders of the bonds actually outstanding. In this case it is merely good fortune, for the holders of the outstanding bonds have no particular equity in their behalf. This mortgage is not similar to many made by the railroad companies, which provide that bonds shall be issued only as the building of the road progresses, and under which the issue of bonds and the increase of security proceed pari passu. There is no provision in the mortgage that the proceeds of the bonds should be used for the improvement of the mortgaged premises, or for enhancing their value. Some of these "outside" holders of the bonds did not deal with the mortgagor company at all, but took the bonds as security for loans made to the Youngs. Therefore, had no action been taken to avoid the transfers from the Tuckahoe Company and the firm to the new corporation, all the bonds held by the receiver would have been valid, and shared in the proceeds of the sale equally with the other bonds. The action of the creditors of the firm of Young & Sons was solely in their own interests, and neither they nor the receiver appointed in their action owed any duty to the creditors or bondholders of the J. W. Young & Sons Company corporation. Whatever, therefore, the outside bondholders gain, they must obtain as a matter of law, and not from any equity existing on their behalf.

I do not think it necessary to examine the proceedings which led to the judgment in this action at any length. One of the respondents, in his brief, asserts that the Tuckahoe Company was not insolvent, and had no unpaid creditors, at the time of its conveyance to the John W. Young & Sons Company. The findings in this action are to the contrary of this claim. But if the claim were true, and the judgment in this action held not to bind the Tuckahoe Company, the position of the respondents would be worse; for, unless the transfer by the Tuckahoe Company is avoided, there can be no question as to the validity of the bonds received and held by it. The fact that the assigned assets are to be administered by the receiver, instead of the assignee, does not affect the status or the rights of the parties. The receiver in this action has just the same rights as the assignee would have had if no receiver had been appointed; and, as already stated, the receiver was appointed solely in the interests of the parties to the action, and those interested in the trust created by the assignments. We may therefore treat the case as if the claim to these bonds was made by the assignee. The bonds issued to the Tuckahoe Company were not void in their inception, but, at most, only voidable. The conveyance, though void as to creditors, was good as between the parties, and neither of them could have impeached it. When the judgment decreed the conveyance by that company void as in fraud of creditors, the assignee was entitled to recover the premises conveyed, free of any lien. A fraudulent grantee is a trustee for the benefit of

creditors. Had the John W. Young & Sons Company been in a condition to have relieved the lands it had received from the Tuckahoe Company from the lien of the mortgage the former company had placed upon them, the court would have compelled it to do so, or to account for the moneys received on the mortgage. The mortgage remains a lien on the land, not by virtue of the right of the fraudulent grantee to incumber the land, but by the saving grace of the statute of frauds, which provides that it shall not operate to affect or impair the title of a purchaser in good faith for a valuable consideration. 2 Rev. St. p. 137, § 5. Therefore the assignee has not obtained, under the decree,—what he was entitled to,—the lands free and clear, but only subject to the lien of the mortgage. Even in the case of the rescission of a contract for fraud, as for instance, in the case of a vendor against vendee, where the vendee has incumbered the land, it would not be necessary for the vendor to tender back the full purchase money. He would be entitled, on a tender, to deduct the amount of the mortgage. "Thus, if a purchaser, who has committed fraud upon the vendor, holds at the time of the rescission a sum of money, belonging to the vendor, as great as that due for the property, and has made payment for what he has bought, he cannot insist upon a tender of the sum so paid by him, as a condition to the seller's right to rescind. He has his money already." · 1 Bigelow, Frauds, p. 424; Montgomery v. Pickering, 116 Mass. 227. And, "where a sale is set aside for an actual fraud upon the creditors, the purchaser is not entitled to ask for repayment of the money paid by him." 1 Bigelow, Frauds, p. 429; Sands v. Codwise, 4 Johns. 536. Indeed, Mr. Bigelow says that such a case is not one of rescission at all. Ordinarily, this is so; but it may be conceded that in a case where the consideration had not merely been paid to the fraudulent grantor, but appropriated by the creditors, equity would compel its restitution to the fraudulent grantee, or that such grantee be given credit therefor. Plainly, however, such restitution would not be directed when the grantee, by reason of alienation of part of the property, or by creating incumbrances thereon, or receiving the rents and profits, was liable to account therefor to the creditor. Here it would seem the irony of fate if the creditors of the fraudulent grantor should both lose the property, because the grantee has incumbered it for more than its value, and the security given for the payment of its purchase price, because they have assumed to avoid the transfer. In case the property conveyed is swept away by the mortgage, as is likely to be the case, the consideration for the issue of the bonds will not have failed to any extent. Nor does the doctrine of merger preclude the receiver's claim. Conveyance by the mortgagor to the mortgagee does not create a merger, against the intent of the parties, or where the grantee has some interest to keep the mortgage alive. Abbott v. Curran, 98 N. Y. 665; Day v. Mooney, 4 Hun, 134; Smith v. Roberts, 91 N. Y. 470. So, in Millspaugh v. McBride, 7 Paige, 509, where the purchaser of the equity of redemption subject to the incumbrance of two mortgages took an assignment of the senior mortgage for the protection of his title,

it was held that such mortgage was not merged in the equity of redemption, so as to make the second mortgage a first mortgage. The principle of that case is entirely applicable to the present one. The difference is only in degree. Though the transaction upon which the bonds were given was voidable at the election of the creditors, I think those creditors may nevertheless hold the bonds, to the extent of securing thereby the realization of their right,—the value of their debtor's property, free and unincumbered. The learned referee therefore erred in holding that these bonds were not entitled to participate in the security of the mortgage. They should share equally with the other bonds, unless the property conveyed by the Tuckahoe Company is, by arrangement with the holders of the other bonds, released from the lien of the mortgage.

We now reach the bonds, amounting to $112,000, given for the stock of merchandise and personal property transferred by the firm of John W. Young & Sons to the corporation. The sole consideration for these bonds was the transfer of the property. This property was directed by the judgment to be transferred back to the receiver. As to the greater part of the property, this order was complied with. Under the view we have already expressed, we do not see how the receiver can have both the property and the bonds. But he is entitled to hold those bonds as security to the extent of the value of the property which the corporation failed to return to him. The receiver sought to give evidence on this subject, but the evidence was excluded. Hence we have no means of determining the amount for which the receiver should be allowed to hold these bonds. The ruling of the referee was erroneous, and a further hearing should be had before him, on which the amount of this claim can be established.

There was a further lot of bonds, amounting to $25,000, held by the receiver. These bonds were issued by the company to the White Plains Bank, as collateral security to notes discounted by the bank for the corporation, and for the firm of John W. Young & Sons. Subsequently, to prevent the bank selling the bonds on default in the payment of the notes, the receiver was authorized by an order of the court to pay off the loan, and take up the bonds. For this purpose he paid the bank the sum of $9,731.23. This sum was allowed him by the referee, but for some reason, which is not entirely clear, he was denied interest on this sum. We can see no justification for this ruling. The counsel for the respondents seek to support it on the ground that the receiver, as the owner of the equity of redemption, was only paying his own debt. The argument in this respect, and, in fact, throughout the whole of the respondents' case, seems to proceed on the theory that the bondholders have some claim on the receiver that his trust be administered in their behalf. This is erroneous. The receiver, as already stated, was not appointed in their interest, or for their benefit. Neither he nor his trust estate was personally liable for the mortgage debt. He had become the owner of the equity of redemption, and he owed the mortgagees the same duty as any other owner of an equity of redemption,—not to commit waste. Beyond this his duty did not go. If the property was not worth more than the mortgage, his expenditures of the other funds of the

estate would be wasteful and illegal. If, with those funds, he saw fit, under the authority of the court, to buy the outstanding obligations held by the White Plains Bank, on such purchase he stood in the same relation to those bonds as any third party.

In this same connection there may be noticed the terms of the findings, upon which the respondents place some reliance. These findings are wholly immaterial. The bondholders were not parties to the action. By the twenty-eighth finding it is found that the property should be turned back to the receiver, subject to the claims of bona fide holders, mortgagees, and other lawful liens against any of said property, as the same may appear. There is no provision of this character in the judgment. But, even if inserted in the judgment; no particular force would be given to it. The lienors were not parties to the suit, and their liens could not have been cut off by the judgment. The finding therefore reserved to such lienors merely the same right they had by law without the finding. It affords no basis for any affirmative claim on their part.

The receiver has further excepted to the report of the referee in sustaining the claims of the holders of certain bonds. The first is that of George L. Miller as the owner of five bonds. It is contended for the receiver that the evidence tends to show that Miller never paid for those bonds. The second is a claim of the First National Bank of Portchester as the holder of $10,000 of the bonds. The bank claims to hold these as collateral for two notes of John W. Young & Sons for the sum of $5,000 each. The receiver insists that these bonds were given as security for only one of the notes. As to these controversies, all that can be said is that they involve purely questions of fact, depending largely on the credibility of the witnesses. The referee had the advantage of seeing the witnesses, and hearing them testify, and the questions are of too doubtful solution to justify us in disregarding his determination.

The order of the special term should be modified by providing that the $20,000 of bonds which came to the receiver from the Tuckahoe Lumber & Coal Company are valid liens on the mortgaged premises; and the matter should be referred back to the referee, to take proof of the value of the personal property delivered by the firm of John W. Young & Sons to the corporation, and not restored by the corporation to the receiver, and that to the extent of such value, with interest, the $112,000 of bonds received by the receiver from the firm be declared a valid lien on the mortgaged premises; that the referee ascertain and determine when the receiver paid the White Plains Bank the sum of $9,731.23; and that the receiver be allowed interest on said sum from the time of such payment. In all other respects the order of the special term is affirmed, without costs of this appeal to either party. All concur.

Order of special term modified, and matter referred back to referee to take proof in accordance with opinion of CULLEN, J.