F. H. McGRAW & CO., Inc., v. MILCOR STEEL CO. et al. (ÆTNA CASUALTY & SURETY CO., Third Party Defendant-Appellant).

No. 147.

Circuit Court of Appeals, Second Circuit.

Feb. 28, 1945.

Rehearing Denied May 14, 1945.

302

Joseph Lotterman, of New York City (Watrous, Gumbart & Corbin, of New Haven, Conn., on the brief), for appellant F. H. McGraw & Co., Inc.

Louis A. Tepper, of New York City (Parmelee & Thompson, of New Haven, Conn., on the brief), for appellant Aetna Casualty & Surety Co.

Walter G. Schelker, Jr., of New York City (David M. Richman, of New Haven, Conn., on the brief), for appellee Milcor Steel Co.

Charles Howard Levitt, of New York City (Seth V. Elting and David T. Smith, both of New York City, and David M. Richman, of New Haven, and Conn., on the brief), for appellee John T. D. Blackburn, Inc.

Before HUTCHESON, SIMONS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an action of interpleader brought under 28 U.S.C.A. § 41(26), and Federal Rules of Civil Procedure, rule 22, 28 U.S.C.A. following section 723c, by F. H. McGraw & Company, Inc., general contractors with the State of Connecticut for construction of the Continued Treatment Units at the Fairfield State Hospital, Newtown, Connecticut. The original defendants were Sherman Plastering Company, Inc., a subcontractor, and various materialmen and others to whom Sherman was or might be indebted on the job. Eventually none of the defendants pressed claims except two, Milcor Steel Co. and John T. D. Blackburn, Inc., of whom the former claims a balance due for supplies to Sherman on this job of $6,372.51, and the latter $9,009.64. These defendants brought in as third party defendant the Aetna Casualty & Surety Company, the surety on the bond .which

McGraw had given to the State as required by Conn.Gen.Stat.,Supp.1937, § 540d(r), Supp.1939, § 786e(r); and this defendant joins with the plaintiff in appealing from the judgment given below for the two materialmen for the amounts claimed, together with interest and costs.

McGraw's contract with Sherman was made on September 1, 1938, and by January 10, 1940, when it was completed, McGraw had paid Sherman $77,195.76, leaving a balance due of not more than $5,382.-90, which it deposited with the court at the commencement of its action. Under the statute, however, it and its surety are responsible for the claims of the materialmen if properly presented and unpaid. The defenses presented by McGraw and its surety to these claims offer the two interesting questions on this appeal: first whether both claims are barred by failure to give a statement of claim to the proper state agency within sixty days pursuant to an earlier statute, now appearing as Conn. Gen.Stat.,Cum.Supp.1935, § 1594c, and second whether the Blackburn claim had not been satisfied by payments made by Sherman. The District Court held that the earlier statute requiring the filing of a statement of claim was repealed by the 1937 statute, and, in advance of trial, struck out appellants' defenses based on failure of the claimants to file the statement of claim contemplated by the earlier statute. Then at trial the court found that Blackburn had not been paid because it had acted within its legal rights in allotting the Sherman payments to material furnished Sherman on another job.

*First. Effect of defendants' failure to file statutory statements of claim.* Conn.Gen. Stat.,Cum.Supp.1935, § 1594c, on which appellants' affirmative defense was based, reads: *"Bonds for protection of employees and material men on public structures. * * * Any person, firm or corporation having any claim for materials and labor used or employed in the execution of such contract shall file, with the officers or agents contracting for any such construction, alteration, removal or repair, a statement of such claim within sixty days after he shall have ceased to furnish such materials or labor."* This requirement was originally adopted as to public contracts in 1917, cf. Conn.Gen.Stat.1930, § 5109; and it was amended to its present form in 1933 (Pub. Acts, c. 178, Supp.1933, § 1113b) to include contracts made by the Highway Commis-

sioner for the construction or repair of highways, cf. Cum.Supp.1935, § 529c. It followed the analogy of a similar statement to a property owner long required for the perfection of mechanics' liens against private property. Gen.Stat.1930, § 5107. The District Court, as a first ground of decision, construed this provision as for the protection of the State only, and hence not a prerequisite to a suit by a materialman against the contractor or the latter's surety. This conclusion appears foreclosed, however, by New Britain Lumber Co. v. American Surety Co. of New York, 113 Conn. 1, 154 A. 147, which held squarely that a complaint seeking recovery against the surety upon a bond given to a town under this statute must be dismissed for lack of allegation by the materialman that it had filed its claim within the sixty-day period.

The District Court further held that section 1594c was repealed by Conn.Gen. Stat.,Supp.1939, § 786e(r), which was enacted in 1937, Supp.1937, § 540d(r), as part of a general reorganization of the executive department of the State, upon recommendation of a legislative commission. At this time there was created a Department of Public Works under the supervision of a commissioner who was to have exclusive charge over "planning, construction, erection, remodeling, alteration, repair or enlargement of any real asset involving an expenditure in excess of one thousand dollars." Supp.1939, § 786e(h); Connecticut Rural Roads Improvement Ass'n v. Hurley, 124 Conn. 20, 197 A. 90 (holding that the statute, as intended by the commission, did not deprive the Highway Commissioner of jurisdiction over highway contracts); Rep.Conn.Commission Concerning the Reorganization of State Depts., 1937, 533–557. The extensive provisions covering the new department also included this statutory requirement that a contractor with the Department must furnish a bond conditioned upon the payment of all materials and labor, on which any party furnishing them may bring suit in the name of the State; but it nowhere contains a requirement of a sixty-day statement of claim by the materialman. Appellants contend nevertheless that section 1594c was not repealed, since it may be applied with the later statute. But we think the District Court was correct in holding otherwise. The extensive nature of the all-inclusive plan of reorganization suggests a complete

overhauling of the system of making public contracts, as, indeed, is suggested in Connecticut Rural Roads Improvement Ass'n v. Hurley, supra, 124 Conn. 20, 35, 197 A. 90, 97. In accordance with the new scheme the bond required differed substantially from that provided by the earlier section.

First, the 1937 statute nowhere provides for a bond to indemnify the State; and it would, therefore, be anomalous to hold that direct liability of the State, which was the prerequisite condition for recovery by a materialman under the earlier form of bonds, still obtained. The bond under section 786e(r), Supp.1939, gives materialmen a direct right of action in the name of the State and liability of the State becomes unnecessary to the scheme. This, moreover, is in harmony with the broader coverage of the bond provided by the later statute. Under section 1594c, Cum.Supp.1935, the required condition was the "payment for all materials and labor used or employed in the execution of such contract"; but under the later section the bond covered all such material or labor, whether or not it "enters into and becomes a component part of the real asset."

And there are further differences. The bond required by the earlier statute was mandatory if the subject matter of the principal contract exceeded $500, but that of the later statute is required only where such subject matter exceeds $1,000. The earlier statute required only one bond to secure performance and payment of the materialmen and contains no specifications as to the amount of the bond. But the later enactment calls for two bonds—one for performance and the other for the protection of materialmen—and provides that their amount shall be "not less than fifty per cent nor more than one hundred per cent of the contract price." It is hardly to be thought that the Legislature intended these entirely different bonds to be required of the contractor simultaneously, and far more reasonable to construe the later statute as a substitute for, rather than a supplement to, the earlier enactment. Wentworth v. L. & L. Dining Co., Inc., 116 Conn. 364, 165 A. 203. Certainly materialmen scanning the 1937 enactment would not have thought of looking back to section 1594c for conditions requiring speedy performance to ensure recovery on the bond. The earlier statute would, however, have an undoubted sphere of operation with reference to public contracts not within the control of the Department of Public Works.

■ Appellants rely further on the fact that subsequent to the District Court's construction of the statutes in question the Connecticut Legislature repealed both section 1594c and section 786e(r), and enacted sections 694f and 695f, Gen.Stat.,Supp. 1941, which required a sixty-day notice of a claim to be given to the prime contractor in certain cases. These sections, it is claimed, amount to a substantial re-enactment of section 1594c, which would not have been necessary were it not for the District Court's opinion, and indicates, so they say, that the Legislature had never intended to write that section off the books. These new sections do not, however, amount to a substantial re-enactment of the earlier statute. The sixty-day notice must be given the main contractor and not the State, as required by the earlier statute. Moreover, the entire scheme of protection differs from that of the earlier enactment and is similar to that afforded on federal projects by the Miller Act, 40 U.S.C.A. §§ 270a, 270b. And furthermore, even if sections 694f and 695f constituted a re-enactment of section 1594c, this still may point to an inference contrary to that which appellants urge upon us, namely, that the Legislature, realizing the need for new legislation, since it had earlier repealed section 1594c, re-enacted that section at the later date. Cf. Mackay v. Commissioner of Internal Revenue, 2 Cir., 94 F.2d 558; Estate of Miller, 110 N.Y. 216, 18 N.E. 139; see also Silver v. Silver, 108 Conn. 371, 143 A. 240, 65 A.L.R. 943. We cannot view the enactment of these new provisions as proof of error on the part of the District Court, and are content to affirm its disposition of appellants' affirmative defense.

*Second. Effect of allocation by Blackburn of payments made by Sherman.* It appears from the record that all of the deliveries by Blackburn to the Newtown job were made between July 19, 1939, and January 9, 1940, and that the moneys paid by Sherman to Blackburn during that period were sufficient in amount to cover Sherman's indebtedness on the Newtown job. But the trial court found that these payments were not allocated at the time of their receipt to Sherman's indebtedness on the Newtown project, but were applied by Blackburn later, and in the exercise of its

privilege as creditor to do so, to other debts owing from Sherman, so as to leave a balance of $9,009.64 due on this job. Appellants claim that Blackburn's books nowhere support Blackburn's alleged allocation, and that the allocation relied on below was actually a plot between Sherman and Blackburn to receive additional payments from McGraw. Indeed, they charged that the conspiracy went so far as to lead to the fabrication of new records in support of the unfounded claim made at trial, the records being so questionable as to be refused in evidence by the District Court. But we are no more impressed than was the court below by appellants' claim of sinister activities on the part of Blackburn and Sherman, for these reveal little else, if anything more, than perfectly natural actions of debtor and creditor in seeking an agreement on the allocation of earlier payments. We agree, as in fact did the District Court, that Blackburn's books did not support its alleged allocation. The court below nevertheless did uphold Blackburn's allocation and concluded this debt not paid.

 To reach this conclusion the District Judge necessarily relied on his finding that no allocation of the payments was made at the time of their receipt; although appellants challenge it, there was no evidence to the contrary, and it must stand.[1] Then as a first ground of decision the judge relied on Blackburn's counterclaim and third party claim in this action, treating these as a specific allocation of Sherman's payments to the price of goods furnished to jobs other than the Newtown project. This, we think, is questionable on the relevant authorities. We agree with the District Court that the law does not require that such allocation be recorded on the creditor's books. Restatement, Contracts, 1932, § 391, Illustration 1; cf. Bank of California v. Webb, 94 N.Y. 467; Dairymen's League Co-operative Ass'n v. Hartford Accident & Indemnity Co., 252 App.

Div. 527, 300 N.Y.S. 431, affirmed 252 App. Div. 527, 300 N.Y.S. 436. But the allocation so made must be timely, and one coming after commencement of the action is not timely. To be sure, except for Sanford v. Van Arsdall, 53 Hun 70, 6 N.Y.S. 494, the New York cases do not seem in accord with the general rule stated in Restatement, Contracts, 1932, § 387(b), comment h, that the creditor's allocation must be within a reasonable time, which period cannot extend beyond the commencement of an action on the claim in question. Bank of California v. Webb, supra; Wanamaker v. Powers, 102 App.Div. 485, 93 N.Y.S. 19, affirmed 186 N.Y. 562, 79 N.E. 1118; Restatement, Contracts, N.Y.Annot., 1933, § 387(b). While the New York law would ordinarily govern, since the place of payment is in that state, Restatement, Conflict of Laws, 1934, § 368; American Woolen Co. v. Maaget, 86 Conn. 234, 85 A. 583, Ann. Cas.1913E, 889, we are here faced with an interpretation of the New York law by the highest court of Connecticut to the effect that it requires a creditor's allocation to be made before suit is brought. American Woolen Co. v. Maaget, supra. If the thesis of Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L. R. 1487, is to prevail that federal courts must reflect so far as possible the state law of the forum, so that litigants may not profit by resort to different courts functioning in the same territory, it would seem that we must accord respect to its holding. Cf. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L. Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462.

 But it also appears that on January 24, 1940, McGraw received a letter from Blackburn, which stated the allocation herein claimed. The content of this letter had previously been disclosed to Sherman. Appellants argue that the Dis-

---

[1] This finding disposes of appellants' further argument that a creditor cannot make a reallocation of funds to revive a debt already extinguished. For the cases cited in support, e.g., Coon's Appeal, 52 Conn. 186, 189; Allen v. Culver, 3 Denio, N.Y., 284, 291; Wright v. Wright, 72 N.Y. 149, 153; United States, to Use of Jackson Ornamental Iron & Bronze Works v. Brent, D.C. W.D.S.C., 236 F. 771; Rickerson Roller-Mill Co. v. Farrell Foundry & Machine Co., 6 Cir., 75 F. 554, can be considered applicable only by virtue of an allocation of payments by law, in the order of their priority. But clearly this legal allocation cannot take place immediately upon receipt, without negating entirely the creditor's power to allocate payments within a reasonable time. Since the creditor has this power in New York, appellants' contention cannot be sustained.

trict Court erred in accepting the writing as sufficient to establish Blackburn's allocation, on the grounds that the letter was admitted in evidence only to show notice, not allocation of the funds, and that it amounted to no more than a self-serving declaration made by a party. But while the letter was first admitted only for the purpose stated, it seems that the persistence of counsel in seeking wider admissibility was in effect rewarded when the court ultimately said, with reference to the letter, "If there is any competent evidence of an allocation in the record, I will consider it." And the objection is of no importance in any event at this stage of the case, because the evidence appears of record and we are entitled to consider it, if legitimate, even had the District Court actually excluded it for the purpose offered. Federal Rules of Civil Procedure, rule 43(c), 28 U.S.C.A. following section 723c. And we see no reason for excluding it on this issue. For what is allocation under the circumstances but an act by a creditor for what he conceives to be his own benefit? Suppose a later allocation is shown by entry on the books, accompanied by notice to the debtor and third parties; is that any less self-serving than the letter here in question? It seems to us quite plain that any adequate evidence of allocation will be to some extent self-serving; any conclusion that it is inadmissible means, as a practical matter, eliminating the creditor's well recognized right to apply payments where the debtor had failed to do so. Hence the District Court did not err in treating the letter of January 24 as an allocation by Blackburn of Sherman's payments.[2]

 Appellants contend further that Blackburn could not make the allocation claimed, even at this early date, because at the time of receipt of Sherman's payments none of the debts to which such payments are claimed to be allocated had as yet matured. On the evidence in the record it is difficult, if not impossible, to determine whether this was the situation at the time each payment was made, and the judge made no specific findings on these points. But we do not believe these issues of fact need be resolved, for we think appellants' objections not applicable to the instant case. While the law generally holds that a creditor may not apply payments to debts not yet matured at the time of receipt, Restatement, Contracts, 1932, § 389(a), Illustration 1; 6 Williston on Contracts, Rev.Ed.1938, § 1797; Bank of Niagara v. Rosevelt, 9 Cow., N.Y., 409; Baker v. Stackpoole, 9 Cow., N.Y., 420, 436, 18 Am.Dec. 508; North American Fisheries & Cold Storage v. Green, 195 App.Div. 250, 186 N.Y.S. 313; Schwartz v. Dashiff, 92 Conn. 135, 138, 101 A. 580, this prohibition is intended primarily for the protection of the debtor and there is no occasion for its operation where the debtor has assented to the creditor's allocation. See Restatement, Contracts, 1932, § 392, and Louis v. Bauer, 33 App.Div. 287, 53 N.Y.S. 985, that mutual assent may validate either a change in application or an original application otherwise not permissible. Here Sherman may actually have instigated the allocation, as the trial court found, or participated therein, as the appellants think in their discovery of the "evil conspiracy." At the very least, it had knowledge of Blackburn's letter, and assented by failure to object. Restatement, Contracts, 1932, § 392; 6 Williston on Contracts, Rev.Ed. 1938, § 1798; Sweeney v. Pratt, 70 Conn. 274, 39 A. 182, 66 Am.St.Rep. 101. The fact that the letter did not claim the exact amount due does not prevent it from showing the intent to allocate. That being established, the amount actually due was subject to proof in usual form.

 While the facts as found by the trial court presented a situation not usual, the rationale seems not difficult. Since debtor and creditor may agree in advance to the application of payments to debts not yet matured, and since application may be made within a reasonable time after payment, there seems no reason to deny force

---

[2] Appellants attempt to contradict Blackburn's letter by a statement they obtained from Legge, an officer of Blackburn, shortly after January 24, 1940, which implied that a somewhat different application and one less favorable to Blackburn had been made. But this statement finds no more support in Blackburn's books than does Blackburn's application. Nor does it anywhere appear that Legge had authority to bind the company in this regard, and we therefore cannot find error in the District Court's disregard of this statement. Cf. Riordan v. Ferguson, 2 Cir., 147 F.2d 983. In truth it would appear that Legge was merely reporting to his inquisitive visitors what seemed the easily obvious bookkeeping and was not attempting to make an informed legal decision of importance to his company.

to such an agreement, made within a reasonable time after payment and as an original application to recover the claims. And there is no ground to apply a different rule here than would govern the relation of debtor and creditor, since New York follows the rule that, even if a materialman knows the original source of the money as from the main contractor, he is under no fiduciary duty to apply the payment to this debt. Sheppard v. Steele, 43 N.Y. 52, 3 Am.Rep. 660; Mack v. Colleran, 136 N.Y. 617, 32 N. E. 604; Note, 41 A.L.R. 1297; 6 Williston on Contracts, Rev.Ed. 1938, § 1806. Accord: Standard Oil Co. v. Day, 161 Minn. 281, 201 N.W. 410, 41 A.L.R. 1291; First Camden Nat. Bank & Trust Co. v. Ætna Casualty & Surety Co., 3 Cir., 132 F.2d 114, certiorari denied Ætna Casualty & Surety Co. v. First Camden Nat. Bank & Trust Co., 319 U.S. 749, 63 S.Ct. 1157, 87 L.Ed. 1704; cases cited 6 Williston on Contracts, § 1806, n. 3; Note, 30 Yale L. J. 766. Under the contrary rule stated in such cases as R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192, rehearing denied 113 F.2d 111, 130 A.L.R. 197, certiorari denied 311 U.S. 700, 61 S.Ct. 139, 85 L.Ed. 454; United States, for Use and Benefit of Crane Co. v. Johnson, Smathers & Rollins, 4 Cir., 67 F.2d 121; Columbia Digger Co. v. Sparks, 9 Cir., 227 F. 780, the result might well be otherwise.

Judgment affirmed.

## On Petition for Rehearing.

Appellants again argue vigorously that allocation of the Sherman payments to Blackburn upon any other claims than those for the Newtown job was definitely forbidden by New York law. This assumes, of course, facts as to which the court below made no findings and the record is unclear, namely, that the payments were actually made prior to the maturing of Sherman's other debts.[1] But appellants still overlook the point that the cases they so much stress were those of dispute between payor and payee. Obviously in such a situation some resort must be had to formal and general rules to supply the gap left by the parties' lack of concord; but where the parties themselves are agreed, there is certainly no reason for a mechanical rule of law to override and set at nought their own desires. See Restatement, Contracts, 1932, §§ 389, 392; Louis v. Bauer, 33 App.Div. 287, 53 N.Y.S. 985. Thus, cases such as Shipsey v. Bowery Nat. Bank, 59 N.Y. 485; Blinn v. Chester, 5 Day, Conn., 166, as well as others relied on by appellants, involve a dispute as to allocation between debtor and creditor.[2]

Of course, there arises the further question whether this mutual accord shall be binding upon third persons, such as the general contractor here; and there are reasons of policy, well set forth in the Fifth Circuit decision cited in our original opinion, upon which to base the argument that giving effect to the parties' agreement to this extent is unfair as an unwelcome surprise to third persons.[3] On the other hand, having in mind the well-known concern of the law for the protection of claims of materialmen and laborers, it is not surprising to find such protection accorded to the extent that a general contractor must secure waivers from the materialmen and laborers before he can safely make final set-

---

[1] Continued reference to this as "accepted," "undisputed," or "admitted" fact or "undisputed proof" seems strange in the light of the sharp dispute (some five pages of it) in Blackburn's brief, the failure of Judge Hincks so to find while he did find generally the existence of other claims during the period, and the careful reservation made in our original opinion. And, lacking the bounteous gift of judgment intuitive and wonderful, we have been unable to discover in the jumbled bookkeeping accounts contained in Exhibits 22 and M-50 that proof which should be the triumphant precursor of real conviction. True it is, however, that in our view, judgment does not turn upon this point, or even upon the date of maturity of the other claims (which appellants contend we erred in fixing as early as January 24, 1940), but rather upon the power of debtor and

creditor to make their own agreement of allocation.

[2] Other New York cases seem only remotely in point at best, e.g., Wright v. Wright, 72 N.Y. 149; Allen v. Culver, 3 Denio, N.Y., 284; while cases outside that jurisdiction, where apt at all, depend on law not applied in New York, e. g., United States Fidelity & Guaranty Co. v. Eichel, 3 Cir., 219 F. 803, rehearing denied, 3 Cir., 233 F. 991, dismissed 239 U. S. 629, 36 S.Ct. 165, 60 L.Ed. 475, that allocation if not made at the time of payment is then by rule of law, or Columbia Digger Co. v. Rector, D.C.W.D.Wash., 215 F. 618, a leading case for the Fifth Circuit view discussed in the original opinion and again below in this opinion.

[3] Belief in this view, as desirable even in New York, seems responsible for division in this case; while "normally, of

tlement with a subcontractor. Choice between these policies is, however, not for us, but for the courts of the state; and as pointed out before, the New York courts have made their choice in favor of the rule applied below. Other points stressed in the petition were discussed in the original opinion, and we shall not re-examine them here.

Petition denied.

HUTCHESON, Circuit Judge (dissenting on rehearing).

When this case was first under consideration, I thought that the judgment should be affirmed as to Milcor, reversed as to Blackburn, and, in a memorandum to my brethren,[1] said so. Whether the shrill and strident clamancy of appellant's frictional approach, calculated with its charges of fraud and perjury to generate more heat than light, was the stone of stumbling to me, or whether that master darkener of counsel, my brother from Connecticut, with his firm footed statement of New York law, turned my feeble light to darkness, I cannot say. I only know that I turned aside from the sole and simple issue on which the decision rightly turned, whether Blackburn was, under the Connecticut statute, "a party who * * * shall have furnished material or supplies * * * and *who has not been paid therefor*" (emphasis supplied), and, stumbling, lost my way. Then it happened to me, as it had to another and worthier Joseph, that my brethren "said one to another, 'Behold, this dreamer cometh'", and they stripped me out of my coat, my coat of many colors, my wondrous judgment intuitive,[2] the feeling which is the triumphant precursor of the just judgment, and cast me into a pit, a pit empty and full of darkness. But convinced against my will, I was of the same opinion still, and, reflecting on the admitted facts that "all of the deliveries by Blackburn to the Newtown job were made between July 19, 1939, and January 9, 1940, that the moneys paid by Sherman to Blackburn during that period were sufficient to cover Sherman's indebtedness on that job", and that the Coxsackie job on which Blackburn and Sherman attempted to reapply the payments did not come into existence until January 24, 1940, I wondered why my original impression, that Blackburn was not a supplier whose claim was unpaid, was not right, and, wondering, moved groping toward the light. When then appellant, still on the Orlando furioso side,[3] but this time concentrating on the accepted fact that the critical payments to Blackburn discharged the Newtown indebtedness before the Coxsackie indebtedness came into being, filed its petition for rehearing, my darkness became light, and I saw face to face what before I had seen through a glass darkly, that "the principle of allocation or appropriation of payments invoked by this court simply does not exist". As appellant in the petition for rehearing very

course, it is nobody else's business how debtor and creditor apply payments," this "seems unreasonable" here "where other persons are involved derivatively, that is through the bond required by statute."

[1] "As to the Blackburn claim, I believe McGraw and the surety are right. Normally, of course, it is nobody else's business how debtor and creditor apply payments. The general rules of law with regard to the right of the debtor first, the creditor second, and then of the law to apply to the oldest debt, arise normally in situations where debtor and creditor alone are concerned. Here, where other persons are involved derivatively, that is through the bond required by statute, it seems unreasonable to me to say under this record, that Blackburn was *a creditor whose claim was unpaid*, when, as I read the record, the Newtown claim was paid and was later revived by agreement between Blackburn and Sherman. I think Judge Hincks finds as much, but he seems to believe that nobody had anything to say about the application except debtor and creditor. I can't agree with him. I think it is wrong to say that Blackburn was a creditor under these circumstances. I vote to affirm as to Milcor, reverse as to Blackburn."

[2] 14 C.L.Q., 274.

[3] "Upon the uncontroverted and conceded facts, the principle of allocation or appropriation of payments, invoked by this Court, simply does not exist. By its ruling that such a doctrine applies to the instant case, empowering the creditor to make an application of the payments, within a reasonable time after their receipt, 'to debts not yet matured', even though only one indebtedness was in existence when the payments were made, *this Court has formulated a rule of law which has never been applied by any court anywhere at any time*. Its decision contravenes the law of Connecticut, which it was required to apply, the law of New York, the common law of the United States, the common law of England and the Roman Civil law from which the doctrine of allocation was first obtained".

well states, "A creditor who receives a payment from his debtor, without direction, at a time when only one debt exists, *has no choice*, no *right to allocate*, no *power to elect*. He *must* apply it upon the existing debt, and the law will do so even if he does not. By that application of law, the debt is *instantly* dischargd upon the creditor's receipt of the payment". Having been discharged, the debt could not be revived so as to make Blackburn, under the Connecticut statute, a supplier whose debt had not been paid.[4] The error in the approach of the district judge and of the majority lies in the fact that they have assumed, contrary to the undisputed proof, that, when the critical payments were made by Sherman to Blackburn, there was in existence a running account of more than one debt, and so assuming, have held that Blackburn, having an option to apply the payment to one or the other of those debts, could exercise it in a reasonable time. I agree with the district judge, and with the majority, that the contract between Blackburn and Sherman was a New York contract, that the payments were made in New York, and that the law of New York determines whether or not Blackburn was a supplier whose debt had not been paid. I think it perfectly clear, though, that under the law of New York, as declared both in the Connecticut[5] and the New York[6] decisions, and as is the rule generally elsewhere,[7] there being only one debt to which the payments could be applied when they were received by Blackburn, it was thereby discharged. Having thus been fully paid, Blackburn could not, by an arrangement between him and the debtor, again become, for the purpose of asserting a statutory liability against the surety, a person whose debt had not been paid.[8] Looked at as the undisputed facts require it to be seen, this is a case where the debtor having fully paid the creditor, creditor and debtor, in order to assert a statutory liability against a surety, have undertaken to cancel the payment and revive the debt. So looked at, the case presents no difficulty either in law or in morals. The fallacy in the majority opinion lies, I think, in its failure to recognize the force of the admitted facts shown by plaintiff's exhibit 22, "Sales made by Blackburn to Sherman Plastering Co.", that from June 29, 1939, to Jan. 24, 1940, when the Coxsackie job commenced, the moneys Sherman had paid in had completely discharged the debts then due, and that the Sherman-Blackburn arrangement was not an allocation of payments, not yet applied, which, under New York law they could have made, but a cancellation of payments made in discharge of the Newtown debt, and their application to a debt created after that discharge. This, as between themselves, of course they could do, but they cannot do it as to the surety.[9] I think it clear that the petition for rehearing as to Blackburn should be granted and the judgment in his favor reversed.

---

[4] In 40 Am.Jur., Payment, Sec. 116, the rule of changing or revoking application is clearly set out. It is there stated, "It is firmly established that an application of a payment made by direction of the debtor cannot be changed or revoked except with the consent of both the creditor and the debtor. It is also held that an application once made by a debtor or creditor to a debt for which a surety or guarantor is bound discharges the latter pro tanto, and he cannot be affected by a change of the application by the creditor and the principal debtor". Wait v. Homestead Bldg. Ass'n, 81 W.Va. 702, 95 S.E. 203, 21 A.L.R. 696.

[5] American Woolen Co. v. Maaget, 86 Conn. 234, 85 A. 583, Ann.Cas.1913E, 889.

[6] Baker v. Stackpoole, 9 Cow., N.Y., 420, 18 Am.Dec. 508; Niagara Bank v. Rosevelt, 9 Cow., N.Y., 409; Shipsey v. Bowery National Bank, 59 N.Y. 485; North American Fisheries & Cold Storage v. Green, 195 App.Div. 250, 186 N.Y.S. 313;

Stone v. Seymour, 15 Wend., N.Y., 19, where, at page 24, it is said:

"A fourth principle appears to be equally well established, to wit: where no application of the payment is made by the debtor, or with his assent, at the time it is received, and there is an existing indebtedness to the amount of such payment, it shall be applied to that; and neither the creditor nor the court shall apply such payment to a debt which was not then due and payable."

[7] Contract Restatement, Sec. 389(a); Williston, Contracts, Vol. 6, Sec. 1797.

[8] United States v. Brent, D.C., 236 F. 771; United States Fidelity & Guaranty v. Eichel, 3 Cir., 219 F. 803; Columbia Digger Co. v. Rector, D.C., 215 F. 618; Appeal of Coon, 52 Conn. 186; Allen v. Culver, 3 Den., N.Y., 284; Wright v. Wright, 72 N.Y. 149; Wait v. Homestead Bldg. Ass'n., Note 4, supra; 40 Am.Jur., Payment, Sec. 116, Note 4, supra.

[9] Authorities, Note 8, supra.