**OLSON CONSTRUCTION COMPANY, a corporation, and United States Fidelity & Guaranty Company, a corporation, Appellants,**

v.

**The UNITED STATES of America for the Use of COOPER SUPPLY COMPANY, Appellees.**

**No. 7368.**

United States Court of Appeals
Tenth Circuit.

June 8, 1964.

Rehearing Denied July 11, 1964.

Stanley E. Wisdom, Wichita, Kan. (Jochems, Sargent & Blaes, Wichita, Kan., and Woods, Aitken & Aitken and Richard L. Spangler, Jr., Lincoln, Neb., with him on the brief), for appellants.

John Robert Seelye, Tulsa, Okl. (Norman Maben, Tulsa, Okl., with him on the brief), for appellee Cooper Supply Co.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an action brought under the Miller Act, 40 U.S.C.A. § 270a, by a supplier for recovery of a balance due for materials delivered to a subcontractor. The suit is brought against the subcontractor, the prime contractor, Olson Construction Company, and its surety, United States Fidelity & Guaranty Company. The subcontractor, Chickasha Plumbing & Heating Company, was not itself bonded for the job in question which was the construction of a hospital at Schilling Air Force Base, Kansas. It was engaged as a subcontractor on several other projects at the same time, including the construction of the Grady County Hospital. The issues here involved concern the application of the subcontractor's payments to the supplier, and the application by the supplier of such payments as between the Schilling Air Force Base job and the Grady County Hospital job.

It appears from the record that the subcontractor was having some difficulty in making payment for materials, and an agreement was made between the prime contractor-appellant and the subcontractor for the payment of the subcontractor's suppliers. This method of payment was as follows: The subcontractor was to prepare checks to be used in payment of its accounts owing to suppliers. These checks with vouchers attached were mailed by the subcontractor to Olson, the prime contractor, with a remittance receipt for each check. The prime contractor would then make its check to the subcontractor for the total amount of such checks; mail this check to the subcontractor; the prime contractor would then mail to the suppliers the checks prepared by the subcontractor in envelopes provided by the subcontractor. During the period in question the subcontractor purchased materials from the supplier, who is the appellee here, in the amount of $26,449.20. Payments were made on this account by the method described above, but a balance at the end of a period of $10,032.38 remained unpaid, and the appellee brought this

action for such balance. The trial court found that the plaintiff-supplier was entitled to recover the unpaid balance on its account and entered judgment therefor against the defendants. The prime contractor and its surety have appealed.

This appeal raises the question as to whether or not the trial court was correct in holding that several payments to the appellee were applied on the proper account of the subcontractor and whether the ultimate application was the proper one. We are concerned with three checks which were mailed to the appellee-supplier in accordance with the method agreed upon by the prime contractor-appellant and the subcontractor described above. The first check was in the amount of $6,945.56 and described as check No. B–3609. This check had attached to it a voucher marked "Job 271 Schilling AFB." This indicated the check was for the Schilling Air Force Base account, and the appellee recognized this fact. On the date the check was received, the appellee applied $445.56 of the amount received to the Schilling account of the subcontractor, and the balance to the subcontractor's Grady County Hospital account with which the appellants had no connection. This application or distribution was made by the appellee on the basis of a letter from the subcontractor dated May 19, 1959, directing that the application of the money be made as above indicated. This distribution of funds by appellee paid in full the balance on the Schilling account of the subcontractor. The original check No. B–3609 was dishonored, but another one in the same amount handled in the same way was provided directly from the subcontractor. Thus as to check No. B–3609, the distribution was made not in accordance with the voucher attached to the check but upon later direction of the debtor subcontractor.

The next check was dated June 8, 1959, in the amount of $5,199.97 and was handled in the manner agreed upon between the prime contractor and the subcontractor. This check had a voucher attached indicating it was payment for the Schilling account of the subcontractor. The appellee received this check June 26, 1959, and applied it to the Schilling account. This application created a credit balance of $4,333.93 in this account. Thereafter on July 14, 1959, the total amount of check No. B–3800 was removed by the appellee from the subcontractor's Schilling account and applied to his Grady County Hospital account. This was done pursuant to a letter from the subcontractor dated July 13, 1959, which requested that the amount of check No. B–3800 be applied on the Grady County Hospital account. As a result of the change in the application of the amount of check No. B–3800, there was created a debit balance in the Schilling Air Force Base account in the amount of $866.04.

On the day following, which was July 15, 1959, another check was received by the appellee and when applied upon the Schilling account paid it in full, and created a credit balance of $2,059.31. This check was No. B–4015 in the amount of $2,906.84. Thereafter, but still on July 15, this credit balance was removed from the Schilling account and transferred to the Grady County Hospital account. This left the Schilling account paid in full.

The appellants urge that the trial court was in error in that it did not follow the doctrine that once a debtor-subcontractor or a creditor-supplier has applied a payment to an obligation for which his surety is bound, then the surety is automatically discharged to the extent of the payment, and neither the debtor nor the creditor can thereafter change the application of the payment to the detriment of the surety. It should be observed that in the case at bar, the surety concerned is the one on the bond of the prime contractor, as the debtor-subcontractor is not bonded. The doctrine is described in some detail in 57 A.L.R.2d 864, and is also discussed in United States to Use of Jackson Ornamental Iron & Bronze Works v. Brent, 4 Cir., 236 F. 771.

The trial court, in finding for the appellee in the case at bar, held that the application of payment made by the appellee and subcontractor could be changed as it was here, and the ultimate application was used to compute the recovery of appellee. The trial court found that the subcontractor did not intend to maintain a credit balance in the Schilling Hospital account while at the same time carrying large debit balances in its Grady County Hospital account with appellee. The court stated it specifically found there was no such intention, and that language on the check voucher meant that the particular check was to be applied first on the Schilling account. The trial court further concluded that under the law of Kansas, a surety could not control the application which either the debtor or the creditor makes of the payment, citing Wyandotte Coal & Lime Co. v. Wyandotte Paving & Construction Co., 97 Kan. 203, 154 P. 1012.

The Wyandotte case, supra, expresses the law of Kansas, and this is apparently the general rule on this point. However we are here concerned with a somewhat different aspect of the application of payments on indebtedness for which a surety is liable. Here the question is whether an application once made may be changed by the debtor or creditor to the detriment of the surety. The surety in the case at bar seeks not to control an initial application of payment, but to invoke a doctrine that once an application is made, it cannot be changed to its detriment.

▇▇▇▇ Appellant relies strongly on United States to Use of Jackson Ornamental Iron & Bronze Works v. Brent, 4 Cir., 236 F. 771, which was an action brought under the Heard Act. Appellee also discusses this case at some length and seeks to distinguish it on its facts. The court there laid down the rule that once an application of a payment has been made on a secured debt, the debt is extinguished pro tanto, and to the extent of such payment, the surety is discharged. The court there also stated that a payment once made and applied cannot be recalled or otherwise applied without the consent of the surety, and it makes no difference whether the surety knows of the transaction or not. The court cited Columbia Digger Co. v. Rector, 9 Cir., 215 F. 618, and United States for Use of Port Blakely Mill. Co. v. Massachusetts Bonding & Ins. Co., 9 Cir., 198 F. 923. The matter is discussed at 21 A.L.R. 712 and at 57 A.L.R.2d 855, and a number of cases are there cited. This rule expressed in these cited cases, and in Borough of Totowa v. American Surety Co. of New York, 39 N.J. 332, 188 A.2d 586, has not been modified. No contrary authority appears, and the rule is applicable to the case at bar. The Wyandotte case, supra, is entirely compatible with such a rule. However the application of the rule must be limited to the extent of the indebtedness on the secured account existing at the time the application of payment is made. The appellee urges in its brief that the rule cannot apply to the portion of the payment that exceeded the balance then due because there was no obligation in excess of the amount for which the surety would be liable. We agree with this contention. The rule is to protect the surety as to debts on which it has an obligation if they are not paid. The surety is in no position to object to the application of payments when the account on which it is bound has been then paid in full. This is no different in principle from a situation where the debtor pays on other accounts, or for other items, when there has been no default. American Casualty Co. of Reading, Pennsylvania v. Line Materials Industries, Tenth Circuit, 332 F.2d 393, May 1964. Thus here the debtor was entirely free to change the application of the payments when the account on which it was originally applied was paid in full. The surety cannot invoke the rule against the change of an application once made when no detriment to it is involved in the particular transaction. The purpose of the rule does not compel its application to the creation of credit balances. The change in application of the funds of check No. B–3800 did create

a debit balance of $866.04, which would be prohibited by the rule, but no detriment resulted as the account was paid in full the following day.

The trial court expressly found that the parties did not intend to create a credit balance in the Schilling account; this finding is supported by substantial evidence. Thus when the application of payment rule is applied but is limited as above indicated, the conclusion must be that the account stands as the trial court found it to be.

Affirmed.